Aspen GREEN, Neale Allen, Jon Michael, Dorita Brady, Wallace L. Craig, Judy Lester, Residents and Qualified Electors in Tortolita, Plaintiffs–Appellants,

v.

CITY OF TUCSON, an Arizona municipal corporation, Defendant–Appellee.

No. 99–15625.

United States Court of Appeals, Ninth Circuit.

Rehearing En Banc Granted Nov. 30, 2000

Argued and Submitted En Banc March 22, 2001

Filed July 9, 2001

Anthony B. Ching, Tempe, Arizona; William J. Risner, Risner & Graham, Tucson, Arizona, for the plaintiffs-appellants.

Dennis P. McLaughlin, Principal Asst. City Atty., Tucson, Arizona, for the defendant-appellee.

Before: SCHROEDER, CHIEF JUDGE, PREGERSON, TROTT, KLEINFELD, MICHAEL DALY HAWKINS, GRABER, WARDLAW, W. FLETCHER, FISHER, PAEZ and BERZON, Circuit Judges.

BERZON, Circuit Judge:

While litigation concerning the constitutionality of a state statute was pending in state court, four individual plaintiffs filed this federal court challenge to the same statute, alleging similar constitutional defects to those alleged by the state court litigants. The district court dismissed the

case, holding that because the federal court plaintiffs could have intervened in the state court proceedings, they were obligated to do so, and could not proceed in federal court.

This case thus raises questions at the core of the interaction of our dual system of courts, state and federal. Each system is competent to decide federal constitutional issues, and each is entrusted with doing so in appropriate cases. The question whether, in the interests of judicial efficiency and of comity, federal courts should refuse to decide cases within their constitutionally and congressionally-conferred jurisdiction has been a recurring one. *See Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996); *New Orleans Pub. Serv. Inc. v. Council of the City of New Orleans,* 491 U.S. 350, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) ("*NOPSI* "); *Colo. River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976); *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943); *R.R. Comm'n of Tex. v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Repeatedly, the Supreme Court has informed us that, although there are limited circumstances in which such abstention by federal courts is appropriate, those circumstances are "carefully defined" and "remain 'the exception, not the rule,'" *NOPSI,* 491 U.S. at 359, 109 S.Ct. 2506 (quoting *Hawaii Housing Auth. v. Midkiff,* 467 U.S. 229, 236, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984)), and that as a general matter, "the federal courts' obligation to adjudicate claims within their jurisdiction [is] 'virtually unflagging.'" *Id.* (quoting *Deakins v. Monaghan,* 484 U.S. 193, 203, 108 S.Ct. 523, 98 L.Ed.2d 529 (1988)); *see also Quackenbush,* 517 U.S. at 716, 116 S.Ct. 1712; *Colorado River,* 424 U.S. at 821, 96 S.Ct. 1236.

To separate the tightly circumscribed circumstances in which it is appropriate for a federal court to dismiss a case properly within its jurisdiction from the basic principle that federal court jurisdiction is mandatory and must be exercised, this court has tended to distill the relevant factors into multi-factor tests. *See, e.g., Fresh Int'l Corp. v. Agric. Labor Relations Bd.,* 805 F.2d 1353, 1357–58 (9th Cir.1986) (stating three-factor test for application of *Younger* abstention); *Confederated Salish v. Simonich,* 29 F.3d 1398, 1407 (9th Cir. 1994) (stating three-factor test for application of *Pullman* abstention). As is often the case with such attempts to create analytic aids to deciding complex issues, however, these standards have not always captured all the relevant factors, and thus may have obscured rather than clarified the path to proper judicial decisionmaking. We are not alone in recognizing that multi-factor tests are prone to "mechanical application that overlooks or underemphasizes the most important features of the ... inquiry." *Daniels v. Essex Group Inc.,* 937 F.2d 1264, 1271 (7th Cir.1991).

The result of this oversimplification has been a tendency for the district courts, and this court, to lose their way in the maze of various abstention doctrines, with the consequence that litigants who had properly invoked federal court jurisdiction are improperly relegated to an exclusive state court remedy for claimed violations of their federal constitutional rights. This case, we conclude, is such an instance: The district court-understandably, given some mixed signals in our case law-misapplied the abstention doctrine derived from *Younger v. Harris* to a situation far outside that doctrine's limited scope as delineated by the Supreme Court. We therefore reverse the decision to abstain under *Younger* and remand for further proceedings.

## Background

In 1997, seventy-two percent of the qualified voters who reside in an area of Pima County, Arizona, known as the Tortolita community petitioned for incorporation. Under Ariz.Rev.Stat. § 9–101.01(A), when more than two-thirds of the qualified electors in an area otherwise eligible for incorporation so petition, the county board of supervisors is required to "declare the community incorporated as a city or town." The Pima County Board of Supervisors accordingly declared the Town of Tortolita incorporated on September 2, 1997, and appointed an interim town council.

The matter of Tortolita's incorporation was, however, far from settled by that declaration. Instead, both before and after the official date of incorporation, Tortolita's fate was embroiled in a complex series of legislative and judicial decisions.

Arizona law has provided since 1961 that a territory within six miles of an incorporated city or town having a population of five thousand or more cannot be incorporated without the consent of the city or town. The boundaries of the Town of Tortolita are less than six miles from the northern boundary of the City of Tucson. Tucson has not consented to the formation of the Town of Tortolita; indeed, according to the plaintiffs in this case, Tucson has never consented to the incorporation of any neighboring communities.

In its 1997 session, to smooth the incorporation of areas such as Tortolita the Arizona legislature enacted a statute suspending the consent requirement for new incorporations "within six miles of an incorporated city or town having a population of five thousand or more persons … that is within a county having a population of more than five hundred thousand but less than one million persons." 1997 Ariz. Sess. Laws ch. 204 § 2. Pima County is the only county in Arizona that meets the statutory criteria. The very day that this enactment became effective, Tucson challenged it in a state court action against State and Pima County, maintaining that the statute was inconsistent with two Arizona constitutional prohibitions against special laws concerning municipal incorporation. *See* Ariz. Const. art. 4, part 2, § 19; Ariz. Const. art. 13, § 1.

The Committee to Incorporate the Town of Tortolita ("Tortolita") thereupon intervened as a defendant in the state court proceedings. Tortolita—as well as Pima County and another intervenor [1]—counterclaimed against Tucson, claiming that the 1961 statute requiring Tucson's consent for incorporation of nearby communities violates the Fourteenth Amendment's Due Process and Equal Protection Clauses, as well as the Guaranty Clause, U.S. Const. art. IV, § 4.[2] The Arizona Superior Court upheld the 1997 exception to the consent requirement, however, and so did not reach the constitutionality of the consent requirement itself. While the City's appeal from this ruling was pending, Pima County declared the Town of Tortolita incorporated.

---

1. Another Pima County community, Casa Adobes, was also in the midst of incorporation proceedings and therefore concerned with the question whether Tucson's consent to incorporation was necessary. Individuals and entities concerned with the Casa Adobes incorporation were involved in the state court proceedings summarized in the text and in a parallel federal court proceeding consolidated by the district court with this one. The current appeal concerns only the Tortolita incorporation. To simplify matters, we leave the Casa Adobes dispute out of this account.

2. The Guaranty Clause provides, in pertinent part: "The United States shall guarantee to every State in the Union a Republican Form of Government."

Shortly thereafter, on November 12, 1997, the Arizona Court of Appeals reversed the Superior Court judgment, holding that the 1997 enactment "is an unconstitutional special and local law" and that "[n]o incorporation which has occurred pursuant to the statute is valid." *City of Tucson v. Woods*, 191 Ariz. 523, 532, 959 P.2d 394, 403 (Ariz.Ct.App.1997). ·After the Arizona Supreme Court denied review, the case was returned to the Superior Court which, after some procedural squabbling, indicated on September 28, 1998, that it would now entertain the Pima County and Tortolita challenges to the 1961 consent statute.

Just before that, however, on September 23, this action was filed in federal court. The present plaintiffs are all residents of and qualified voters in the area declared incorporated as Tortolita, but none of the individual plaintiffs was, at the time this case was filed, or later became, a party to the state court proceedings.[3] In their complaint, the plaintiffs alleged that they "participated in the political dialogue and ... exercised their franchise to vote for the incorporation of Tortolita by circulating and signing petitions for incorporation and have sought to enjoy the benefits of self-government and self-determination" and that the state law that frustrated the incorporation effort is an unconstitutional infringement of their right to vote, violating the Equal Protection and Due Process Clauses of the Fourteenth Amendment as well as the Guaranty Clause. Plaintiffs sought a declaration that Ariz.Rev.Stat. § 9–101.01 is unconstitutional, a permanent injunction against the statute's operation, a declaration that Tortolita was validly incorporated in September 1997, and unspecified damages.

·Tucson answered on the merits, but also raised as a defense the contention that the district court should abstain from deciding this case on several grounds, among them the abstention doctrine derived from *Younger v. Harris.* After the parties filed motions and cross-motions for summary judgment, not raising any abstention issue, the district court directed the parties to address whether or not the court should proceed to decide the summary judgment motions or, instead, should decline to do so because of the pendency of the state court proceedings concerning different plaintiffs' similar constitutional claims.

Upon consideration, the district court decided that *Younger* abstention was appropriate.[4] In doing so, the court applied a three-pronged standard accurately reflecting this court's case law:

Absent "extraordinary circumstances," *Younger* abstention is proper when the following three conditions have been met:

(1) There are ongoing state judicial proceedings;

(2) The proceedings implicate important state interests; and

(3) The state proceedings provide the plaintiff with an adequate opportunity to raise the federal claims.

*Hirsh [v. Justices of the Supreme Court of the State of California]*, 67 F.3d [708,] 712 [(9th Cir.1995)]; *Martinez [v. Newport Beach City,]* 125 F.3d [777,] 781 [(9th Cir.1997)].

*See also Fresh International,* 805 F.2d at 1357–58.[5] The district court assumed the

---

3. The Town of Tortolita was added as a plaintiff in the First Amended Complaint, but later moved for voluntary dismissal from the federal litigation after Tucson challenged its standing to maintain suit.

4. The parties also briefed whether abstention under *Pullman* or *Colorado River* was proper.

5. We will call this standard the *Fresh International* standard, but it traces back to *Middlesex County Ethics Committee v. Garden State*

applicability of the first two prongs and, relying on *Delta Dental Plan of California v. Mendoza*, 139 F.3d 1289, 1297 (9th Cir. 1998), held that, because the plaintiffs in this case could have intervened in the ongoing state court action, the third prong was met as well. The court therefore dismissed the case, as would be proper if *Younger* abstention was indeed appropriate,[6] and plaintiffs appealed.[7]

After the district court's dismissal of this case, the Town of Tortolita and four Tortolita residents-but not the plaintiffs in this suit-intervened in the state court proceedings. While this appeal was pending, the state Superior Court upheld the consent statute, Ariz.Rev.Stat. § 9–101.01(B)(1), as constitutional, and the Arizona Court of Appeals, on March 15, 2001, affirmed.[8]

## Discussion

### I. Standard of Review

This court has applied two different standards of review in *Younger* abstention cases. One was articulated in *Fresh International*, 805 F.2d at 1356, in which this court stated: "When a case falls within the proscription of *Younger*, a district court must dismiss the federal action." With that mandatory requirement in mind, we announced that "we review de novo a district court's refusal to abstain under *Younger*." *Id.* We have applied the same standard of review when the district court did

abstain under *Younger*. *World Famous Drinking Emporium, Inc. v. City of Tempe*, 820 F.2d 1079, 1081–82 (9th Cir. 1987). This rule-de novo review of the question whether *Younger* applies, and no discretion to retain jurisdiction over the proceeding if it does-has been followed in most of this court's cases under *Younger*. *See, e.g., Delta Dental*, 139 F.3d at 1294; *Wiener v. County of San Diego*, 23 F.3d 263, 266 (9th Cir.1994); *Dubinka v. Judges of the Superior Court*, 23 F.3d 218, 221 (9th Cir.1994); *Kenneally v. Lungren*, 967 F.2d 329, 331 (9th Cir.1992); *Gartrell Constr. Inc. v. Aubry*, 940 F.2d 437, 441 (9th Cir.1991); *Kitchens v. Bowen*, 825 F.2d 1337, 1339 (9th Cir.1987).

In a few cases, however, we have applied a more deferential standard of review. For example, in *Mission Oaks Mobile Home Park v. City of Hollister*, 989 F.2d 359, 360 (9th Cir.1993), a case in which the district court had abstained under *Younger*, we set out the standard of review as follows: "Whether a case meets the requirements of a particular abstention doctrine is a question of law that we review de novo.... Once we have determined that the. requirements are met, we review the district court's actual decision to abstain *only for an abuse of discretion.*" (Emphasis added.) We have followed the *Mission Oaks* abuse-of-discretion standard in some subsequent *Younger* cases. *Adam v. Hawaii*, 235 F.3d 1160, 1162 (9th Cir.2000), as

---

Bar Ass'n, 457 U.S. 423, 432, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982).

**6.** *See San Remo Hotel v. City & County of San Francisco*, 145 F.3d 1095, 1103 (9th Cir. 1998).

**7.** The district court also dismissed plaintiffs' claim for monetary damages under 42 U.S.C. § 1983. We do not reach the question whether that conclusion would be correct in a case as to which dismissal of the claims for declaratory and injunctive relief was proper under *Younger,* because we conclude that *Younger*

abstention was not appropriate in this case at all. *Cf. Adam v. Hawaii,* 235 F.3d 1160, 1163 (9th Cir.2000), as amended by 2000 WL 33141820 (2001) (holding that this circuit "disfavors" applying *Younger* to § 1983 claims for money damages).

**8.** Two of the Casa Adobes plaintiffs filed a petition for review in the Arizona Supreme Court, which was denied. Pima County filed a petition for review on May 18, 2001, upon which the Arizona Supreme Court has not yet taken action.

amended by 2000 WL 33141820 (2001); *Martinez*, 125 F.3d at 780.[9] These "abuse of discretion" cases do not give any reason for applying that standard, however, or for declining to follow *Fresh International;* rather, they often cite cases arising under different abstention doctrines. *See, e.g., Martinez*, 125 F.3d at 780 (citing *Fireman's Fund Ins. Co. v. Quackenbush*, 87 F.3d 290, 294 (9th Cir.1996) (applying *Burford* and *Colorado River* doctrines)); *Mission Oaks*, 989 F.2d at 360 (citing *Privitera v. Cal. Bd. of Med. Quality Assurance*, 926 F.2d 890, 895 (9th Cir.1991) (applying *Pullman* and *Colorado River* doctrines)).

■■■ We conclude that, because of the nature of *Younger* abstention, the *Fresh International* standard of review, not the *Mission Oaks* standard, is the appropriate one. The Supreme Court has stressed, on the one hand, that federal courts are obliged to exercise the jurisdiction given to them, *Colorado River*, 424 U.S. at 817, 96 S.Ct. 1236, and, on the other, that when a case meets the narrow *Younger* exception to that general principle "there is no discretion to grant injunctive relief." *Id.* at 816 n. 22. So in addressing *Younger* abstention issues, district courts must exercise jurisdiction except when specific legal standards are met, and may not exercise jurisdiction when those standards are met; there is no discretion vested in the district courts to do otherwise. As the Seventh Circuit recently noted, in these circumstances the only sensible standard of review is de novo, because "[a] standard of review that asks us to review a lower court's decision for an abuse of discretion that simply does not exist is inappropriate." *Trust & Inv. Advisers, Inc. v. Hogsett*, 43 F.3d 290, 294 (7th Cir.1994).

We therefore overrule the cases cited above—and any others that may exist—that apply an abuse of discretion standard in reviewing dismissals or failures to dismiss a case on the basis of *Younger* abstention and, for the reasons recounted above and in *Fresh International*, adopt instead a de novo standard of review.[10]

## II. The Scope of the *Younger* Doctrine

The three-part *Fresh International* test applied by the district court appears, on its face, to apply *whenever* there is a state court proceeding pending that implicates important state interests and provides the federal court plaintiff with the opportunity to raise federal claims. Read literally, this test could lead one to the conclusion that the plaintiffs in a state court proceeding who raise a federal issue may never file a parallel proceeding in federal court raising the same issue without running afoul of *Younger*.

9. Other circuits are split on whether to apply a de novo standard of review or an abuse of discretion standard to *Younger* abstention cases. *See, e.g., Brooks v. New Hampshire Supreme Court*, 80 F.3d 633, 637 (1st Cir. 1996) (de novo); *Alexander v. Ieyoub*, 62 F.3d 709, 712 (5th Cir.1995) (abuse of discretion); *Martin Marietta Corp. v. Maryland Comm'n on Human Relations*, 38 F.3d 1392, 1396 (4th Cir.1994) (abuse of discretion); *O'Neill v. City of Philadelphia*, 32 F.3d 785, 790 (3d Cir. 1994) (de novo review of question whether conditions for *Younger* abstention are met, and abuse of discretion review of district court's decision); *Traughber v. Beauchane*, 760 F.2d 673, 676 (6th Cir.1985) (de novo);

*Ramos v. Lamm*, 639 F.2d 559, 564 n. 4 (10th Cir.1980) (abuse of discretion). The circuits that apply an abuse of discretion standard have done so with little explanation.

10. We have no occasion in this case to consider the standard of review applicable when abstention doctrines not based on *Younger* are at stake. *See Fresh Int'l*, 805 F.2d at 1356 n. 2; *Confederated Salish*, 29 F.3d at 1407 (reviewing *Pullman* abstention decision for abuse of discretion); *Nakash v. Marciano*, 882 F.2d 1411, 1413 (9th Cir.1989) (reviewing *Colorado River* abstention decision for abuse of discretion).

■ A brief review of the Supreme Court's case law concerning the reach of the *Younger* doctrine, beginning with *Younger* itself and culminating in *NOPSI*, makes clear that the *Younger* abstention doctrine does not reach so far. Rather, the *Younger* doctrine applies only when there is an additional element absent here: that the federal relief sought would interfere in some manner in the state court litigation. That requirement ordinarily (although not always, *see Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987)) restricts application of the *Younger* doctrine to circumstances in which the state court proceeding is an enforcement action against the federal court plaintiff, and is not met simply by the prospect that the federal court decision may, through claim or issue preclusion, influence the result in state court.

### A. Younger *Prohibits Federal Courts from Granting Relief that Would Interfere With an Ongoing State Judicial Proceeding.*

The case that gave its name to the *Younger* abstention doctrine originated when a criminal defendant sought a federal court injunction under 42 U.S.C. § 1983 against a pending state court prosecution, contending that the statute under which he was being prosecuted violated the First Amendment. 401 U.S. at 41, 91 S.Ct. 746. Relying in part on traditional equitable principles and in part on considerations of comity among dual judicial systems grouped under the term "Our Federalism," *id.* at 44, 91 S.Ct. 746, *Younger* reiterated a "longstanding public policy against federal court interference with state court proceedings," such that "the normal thing to do when federal courts are asked to

enjoin pending [criminal] proceedings in state courts is not to issue such injunctions." *Id.* at 43, 45, 91 S.Ct. 746; *see also id.* at 46, 91 S.Ct. 746 (stressing "the fundamental policy against federal interference with state criminal prosecutions"); *id.* at 53, 91 S.Ct. 746 (referring to "settled doctrines that have always confined very narrowly the availability of injunctive relief against state criminal prosecutions"). At the same time, the Court carefully explained that comity does not require "blind deference," *id.* at 44, 91 S.Ct. 746, to the states:

> What the concept does represent is a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not *unduly interfere* with the legitimate activities of the States.

*Id.* (emphasis added).

*Younger* itself exemplified the kind of "interference" that was sufficiently grave to require the federal court's abstention from hearing a case that was, in all other respects, jurisdictionally proper. The state had begun a criminal prosecution in state court, and the plaintiff could have raised his constitutional challenge to the state statute as a defense in his prosecution. By seeking instead to have the federal court prevent the state court from going forward, the plaintiff was asking the federal court to intervene in a state court proceeding instigated by the state to vindicate state interests. *Id.* at 49, 91 S.Ct. 746.[11]

---

11. *Younger* recognized that, under "extraordinary circumstances," federal intervention in a state prosecution could be appropriate, such as when a statute "might be flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." 401 U.S. at 53–54, 91 S.Ct. 746 (internal quotation omitted).

The Supreme Court's subsequent cases have fleshed out the kinds of "federal intervention," *id.* at 54, 91 S.Ct. 746, in state judicial proceedings that justify a federal court's refusal to hear a case otherwise within its jurisdiction. Although *Younger* arose in the context of a criminal prosecution, the Supreme Court has extended its application to various kinds of "civil enforcement proceedings" as well. *NOPSI,* 491 U.S. at 368, 109 S.Ct. 2506. *See, e.g., Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) (civil nuisance proceeding); *Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982) (state bar disciplinary proceeding); *Ohio Civil Rts. Comm'n v. Dayton Christian Schs., Inc.,* 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986) (administrative enforcement proceeding). Additionally, the Court has applied *Younger* abstention principles to "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions," *NOPSI,* 491 U.S. at 368, 109 S.Ct. 2506, requiring, for example, dismissal of a § 1983 action brought by the losing party in a state court action who sought to enjoin the state procedures for enforcing the judgment against it. *Pennzoil,* 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1; *see also Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) (contempt proceedings). *See also NOPSI,* 491 U.S. at 367–68, 109 S.Ct. 2506 (summarizing these developments).

Similarly, much as a federal injunction against an ongoing state enforcement proceeding effectively stops that proceeding cold, so too may a declaratory judgment. The Supreme Court thus held that *Younger* barred a suit for declaratory relief against the operation of a state criminal statute under which the plaintiff was being prosecuted in state court because declaratory relief, the Court determined, would "result in precisely the same interference with and disruption of state proceedings that the long-standing policy limiting injunctions was designed to avoid." *Samuels v. Mackell,* 401 U.S. 66, 72, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971).

Of the Supreme Court's *Younger* cases, *Middlesex* is particularly significant to our analysis here, because it is the source of the three-factor test that our circuit has adopted for determining when the *Younger* doctrine should apply. *Middlesex,* 457 U.S. at 432, 102 S.Ct. 2515. As such, *Middlesex* provides an informative example of how care must be taken, in using a multi-factor analysis, to examine the context in which the analysis first was articulated.

The plaintiffs in *Middlesex,* in lieu of filing an answer to state bar disciplinary charges against one of them, filed suit in federal court seeking to enjoin the state bar proceedings, alleging that the disciplinary rules violated their First Amendment rights.[12] 457 U.S. at 429, 102 S.Ct. 2515. The departing premise for the Supreme Court's *Younger* analysis was that *Younger* "espouse[s] a strong federal policy against federal-court *interference* with pending state judicial proceedings." *Id.* at 431, 102 S.Ct. 2515 (emphasis added). There was no doubt, though, that the plaintiffs in *Middlesex* were seeking to "interfere" quite directly with the pending, state-instigated disciplinary proceedings, for they were asking the federal court to enjoin those enforcement proceedings. The Court therefore did not discuss the interference issue further.

---

**12.** Although the Supreme Court's opinion does not explicitly state that the plaintiffs sought injunctive relief, the lower court's opinion makes this clear. *See Garden State Bar Ass'n v. Middlesex County Ethics Comm.,* 643 F.2d 119, 121 (3d Cir.1981).

The three factors that became our *Younger* standard first appeared as the *Middlesex* Court's summary of three *other* issues pertaining to *Younger* that *were* in dispute in the case:

> The question in this case is threefold: first, do state bar disciplinary hearings within the constitutionally prescribed jurisdiction of the State Supreme Court constitute an ongoing state judicial proceeding; second, do the proceedings implicate important state interests; and third, is there an adequate opportunity in the state proceedings to raise constitutional challenges.

*Id.* at 432, 102 S.Ct. 2515. The Court answered each of these questions in the affirmative on the facts of the case, and concluded that abstention was therefore appropriate. But-and this contextual circumstance is critical to our present inquiry-the three-factor analysis was triggered in the first place only because it was understood that the relief sought in federal court would have interfered directly with the state proceedings.

B. *A Conflicting Federal Court Decision on a Point of Law Does Not "Interfere" With an Ongoing State Proceeding for* Younger *Purposes.*

The Supreme Court has since confirmed that "interference" with ongoing state judicial proceedings is a necessary condition for *Younger* abstention. In doing so, the Court has clarified what kinds of federal court actions so "interfere" with state proceedings as to justify an exception to the fundamental precept that federal courts must ordinarily exercise the jurisdiction Congress has, consistently with the Constitution, conferred upon them.

In *NOPSI*, a case in all relevant respects identical to this one, the Supreme Court considered whether the district court properly abstained under *Younger* when the plaintiff brought a § 1983 action for declaratory and injunctive relief against the operation of a City Council utility rate order. NOPSI, the New Orleans electric utility, filed both a petition for review in Louisiana state court of the City Council's decision and, in federal court, a § 1983 action challenging the ratemaking as preempted by federal law. 491 U.S. at 357–58, 109 S.Ct. 2506.[13] The district court dismissed NOPSI's federal case, based in part on the abstention doctrine stated in *Younger.*

Considering whether *Younger* abstention could apply to the case, the Supreme Court concluded that it could not. The state court petition for review proceeding did implicate a substantial, legitimate state interest in regulating utility rates, the Court held, *id.* at 365, 109 S.Ct. 2506, but it was nonetheless not the "type of proceeding to which *Younger* applies." *Id.* at 367, 109 S.Ct. 2506. For, although the *Younger* principle extends beyond the doctrine's initial context of state criminal prosecutions, wrote the Court, "it has never been suggested that *Younger* requires abstention in deference to a state judicial proceeding *reviewing legislative or executive action.*" *Id.* at 368, 109 S.Ct. 2506 (emphasis added). To the contrary, the Court pronounced, "[s]uch a broad abstention requirement would make a mockery of the rule that only exceptional circumstances justify a federal court's refusal to decide a case in deference to the States." *Id.*

Analyzing the Council's ratemaking proceedings and the subsequent state court challenges to it, the Court concluded that the ratemaking decision itself was a com-

---

**13.** Although the state court action originally did not raise the federal preemption question, it was later amended to do so.

pleted legislative action and that the state-court review of that action was not an extension of the legislative process. *Id.* at 372, 109 S.Ct. 2506. The relief sought in federal court, therefore, did not represent "the interference with ongoing judicial proceedings against which *Younger* was directed," but was, "insofar as our policies of federal comity are concerned, no different in substance from a facial challenge to an allegedly unconstitutional statute or zoning ordinance-*which we would assuredly not require to be brought in state courts." Id.* at 372–73, 109 S.Ct. 2506 (emphasis added).

The Court went on to clarify further the meaning of "interference" with ongoing judicial proceedings for *Younger* purposes:

> It is true, of course, that the federal court's disposition of such a case may well affect, or for practical purposes preempt, a future-or, as in the present circumstances, *even a pending*-state court action. But there is no doctrine that the availability or *even the pendency* of state judicial proceedings excludes the federal courts.

*Id.* at 373, 109 S.Ct. 2506 (emphasis added).

■ In short, as the Court has often repeated, the "mere potential for conflict in the results of adjudications," *Colorado River,* 424 U.S. at 816, 96 S.Ct. 1236, is not the kind of "interference" that merits federal court abstention. Rather, the possibility of a race to judgment is inherent in a system of dual sovereigns and, in the absence of "exceptional" circumstances, *id.* at 818, 96 S.Ct. 1236, that possibility alone is insufficient to overcome the weighty interest in the federal courts exercising their jurisdiction over cases properly before them.[14]

■ *NOPSI,* then, clarifies that the three-part test we derived from *Middlesex* is a suitable guide for analysis only when the threshold condition for *Younger* abstention is present-that is, when the relief sought in federal court would in some manner directly "interfere" with ongoing state judicial proceedings-and that further, such interference is not present merely because a *plaintiff* chooses to instigate parallel affirmative litigation in both state and federal court. Any other view, as *NOPSI* emphasizes, would amount to the "doctrine that the availability or even the pendency of state judicial proceedings excludes the federal courts," *id.* at 373, 109 S.Ct. 2506, a doctrine that simply cannot be reconciled with the dual judicial system we have inherited and the concomitant obligation of the federal courts ordinarily to assert the jurisdiction conferred upon them.

It is true, of course, that allowing parallel federal and state court litigation will not always promote judicial efficiency and could lead to conflicting results. But "the interest of avoiding conflicting outcomes in

---

14. *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), permits a district court, under "exceptional" circumstances, to abstain from exercising "concurrent jurisdiction" over a case that is precisely parallel to litigation in state court. *Id.* at 818, 96 S.Ct. 1236. The factors that justified abstention in that case were the "inconvenience of the federal forum," the "desirability of avoiding piecemeal litigation," and the "order in which jurisdiction was obtained by the concurrent forums." *Id.* The Court emphasized, however, that "[n]o one factor is necessarily determinative" and that "[o]nly the clearest of justifications will warrant dismissal." *Id.* at 818–19, 96 S.Ct. 1236. Because the district court in this case rested its decision solely on the *Younger* doctrine and because, as we discuss in the next section, the parties in the state and federal cases here were not the same, we have no occasion to decide whether the limited abstention doctrine covering precisely parallel state and federal court litigation announced in *Colorado River* has any application here.

the litigation of similar issues, while entitled to substantial deference in a unitary system, must of necessity be subordinated to the claims of federalism . . . ." *Doran v. Salem Inn,* 422 U.S. 922, 928, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975); *see also id.* ("[T]he very existence of one system of federal courts and 50 systems of state courts, all charged with the responsibility for interpreting the United States Constitution, suggests that on occasion there will be duplicating and overlapping adjudication of cases which are sufficiently similar in content, time, and location to justify being heard before a single judge had they arisen within a unitary system."). Since the possibility of duplicative litigation is a price of federalism, the prospect of such duplication, without more, does not constitute interference with state court proceedings justifying a federal court's dismissal of a case properly within its jurisdiction.

### C. The Federal Case Brought Here Does Not Interfere With the State Litigation.

We have concluded that the three-prong *Fresh International* test, standing alone, fails to account for the principle that underlies *Younger, Middlesex,* and all the Supreme Court's *Younger* case law, and that *Younger* applies only when the relief the plaintiff seeks in federal court would "interfere" with the ongoing state judicial proceeding. Here, the federal court action did not seek to enjoin, declare invalid, or otherwise involve the federal courts in terminating or truncating the state court proceedings.

■ Further, the difficult question in *NOPSI,* whether the underlying rate making action challenged by the plaintiffs was legislative or judicial in nature, is simply not present in this case. Here, the federal court plaintiffs are doing nothing more than challenging the constitutionality of a state statute, that is, "challeng[ing] completed legislative action." *NOPSI,* 491 U.S. at 372, 109 S.Ct. 2506. That some issues may be litigated in the federal court that are also pending before the state courts in the parallel lawsuit does not implicate the *Younger* doctrine. We therefore conclude that the district court erred in dismissing this case on *Younger* grounds.

This conclusion is consistent with much of our *Younger* abstention case law, but not all of it. In large part, our case law has recognized that such parallel state and federal affirmative lawsuits challenging state action as those at issue in *NOPSI* and here do not implicate the *Younger* doctrine. In *Fresh International,* for example, we explained that "*Younger* abstention ordinarily would not apply when a federal plaintiff also is the plaintiff in state court." 805 F.2d at 1360 n. 8; *see also Confederated Salish,* 29 F.3d at 1405–06 (holding that the district court did not err in refusing to abstain under *Younger* where the federal plaintiff, who was also the state-court plaintiff, did "not seek . . . to restrain any ongoing state proceeding").[15]

---

**15.** Other circuits have also so recognized. *See Rogers v. Desiderio,* 58 F.3d 299, 301 (7th Cir.1995) (recognizing that *Younger* did not apply to federal lawsuit brought by plaintiff who had also brought a state-court suit challenging the same state action, and observing that the court "could not find any case applying the *Younger* principle to two suits filed by the same party"); *Marks v. Stinson,* 19 F.3d 873, 885 (3d Cir.1994) ("A federal plaintiff may pursue parallel actions in the state and federal courts so long as the plaintiff does not seek relief in the federal court that would interfere with the state judicial process. Moreover, since parallel proceedings always involve a likelihood that a final merits judgment in one will effectively terminate the other, it necessarily follows that the mere fact that a judgment in the federal suit might have collateral effects in the state proceeding *is not interference for* Younger *purposes.*") (emphasis added); *Crawley v. Hamilton County Comm'rs,* 744 F.2d 28, 30 (6th Cir.1984) (re-

Our decisions, however, have tended to recite the *Middlesex/Fresh International* factors without repeating the context in which they are applicable. Probably because the critical context had thus faded into the background, at least one case, *Mission Oaks,* lost sight of the principle that *Younger* does not apply to parallel state and federal litigation like that at issue in this case. To the extent that *Mission Oaks* and any other of our cases conflict with today's decision concerning the boundaries of the *Younger* abstention doctrine, we overrule them.

### III. *Younger's* Application to Non–Parties

■ There is a second reason why the district court's decision in this case cannot stand. Relying on *Delta Dental,* the district court decided that the state court litigation provided the plaintiffs with an adequate opportunity to raise their federal constitutional challenges because they were similarly situated to the state court plaintiffs and could have intervened in the state court case. The district court therefore abstained from deciding the case that the plaintiffs brought to federal court. We conclude that, because the plaintiffs in this case were not involved in the state litigation, it was error to have applied *Younger* abstention in this case even if the doctrine were otherwise properly applicable.

A. *The* Younger *Doctrine Does Not Apply to Non–Parties to the State Court Litigation Simply Because the Non–Parties Could Have Intervened in the State Court Litigation.*

■ As our discussion to this point makes clear, *Younger* abstention is a circumscribed exception to mandatory federal jurisdiction; it is not intended to cut a

broad swath through the fabric of federal jurisdiction, relegating parties to state court whenever state court litigation could resolve a federal question. Consistent with the limited role of *Younger* abstention, the Supreme Court has indicated that, usually, federal plaintiffs who are not also parties to pending litigation in state court may proceed with their federal litigation. While the Court has also recognized that there are narrow circumstances in which the connection between the plaintiffs in federal court and parties to the litigation in state court is so close that *Younger* may apply to non-parties, those circumstances are not present here.

Early in the development of the *Younger* doctrine, the Court in two paradigmatic cases addressed the question whether individuals who were not parties to the state litigation could proceed with a constitutional challenge to the statute involved in the state litigation in federal court. *Hicks v. Miranda,* 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975); *Doran v. Salem Inn,* 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975). In *Hicks,* after two of their employees were charged under the state obscenity statute for showing a film and four copies of the film were seized, owners of an adult movie theater sued in federal court for return of their film copies and an injunction against the enforcement of the statute. The Court explained that, under the particular circumstances of that case, *Younger* barred the federal suit: The owners' "interests and those of their employees were intertwined," given the fact that the seized films belonged to the owners but were central to the pending prosecutions. *Hicks,* 422 U.S. at 345, 348, 95 S.Ct. 2281. Consequently, "the federal action sought to interfere with the pending state

versing district court's decision to abstain under *Younger* because the federal plaintiffs

were also the plaintiffs in state court).

prosecution," *id.* at 349, 95 S.Ct. 2281, and the district court was constrained to abstain for that reason.

■■■ Shortly thereafter, the Court clarified that when the federal plaintiff is not a party to the state court action, a mere commonality of interest with a party to the state litigation is not sufficient to justify abstention. In *Doran,* three bar owners sought an injunction in federal court against the operation of a local ordinance prohibiting topless entertainment in bars. Two had complied with the ordinance, but the third owner had not and was prosecuted in state court. 422 U.S. at 924–25, 95 S.Ct. 2561. Despite the similarity of the plaintiffs' interests, the Court held that *Younger* did not bar the two plaintiffs who did not face prosecution from pursuing their cause of action in federal court:

> We do not agree ... that all three plaintiffs should automatically be thrown into the same hopper for *Younger* purposes[.] ... We cannot accept that view, any more than we can accept petitioner's equally Procrustean view that because [the plaintiff subject to prosecution] would have been barred from injunctive relief had it been the sole plaintiff, [the other two plaintiffs] should likewise be barred not only from injunctive relief but from declaratory relief as well. While there plainly may be some circumstances in which legally distinct parties are so closely related that they should all be subject to the *Younger* considerations which govern any one of them, this is not such a case;*-while respondents are represented by common counsel, and have similar business activities and problems, they are apparently unrelated in terms of ownership, control, and management.* We thus think that each of the respondents should be placed in the position required by our cases as if that respondent stood alone.

*Id.* at 928–29, 95 S.Ct. 2561 (emphasis added); *see also Steffel v. Thompson,* 415 U.S. 452, 471 n. 19, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974) (holding that the plaintiff, who was not himself subject to prosecution, could seek to enjoin enforcement of a criminal trespass ordinance even though his companion was being prosecuted); *Benavidez v. Eu,* 34 F.3d 825, 832 (9th Cir. 1994) (holding that *"Younger*'s scope is closely circumscribed to parties actually involved in state litigation" and, therefore, *Younger* did not bar the suit of a plaintiff whose lawyer was involved as amicus in a state proceeding concerning similar claims).

■■■ Together, then, *Hicks* and *Doran* circumscribe the quite limited circumstances under which *Younger* may oust a district court of jurisdiction over a case where the plaintiff is not a party to an ongoing state proceeding: Congruence of interests is not enough, nor is identity of counsel, but a party whose interest is so intertwined with those of the state court party that direct interference with the state court proceeding is inevitable may, under *Younger,* not proceed.

B. *Plaintiffs Are, As a Rule, Entitled to Their Own Day in Court.*

■■■ The Supreme Court has since reaffirmed, in a related but separate context, the principle that, absent extraordinary circumstances, each plaintiff is entitled to his own day in court, and that therefore the mere existence of litigation brought by other parties with similar interests does not bar a plaintiff from pursuing his own litigation. In *Richards v. Jefferson County,* 517 U.S. 793, 116 S.Ct. 1761, 135 L.Ed.2d 76 (1996), the Court held that, although three plaintiffs challenging a state tax represented "essentially identical" interests to distinct individuals who brought a subsequent challenge to the tax,

*id.* at 796, 116 S.Ct. 1761, the latter group of plaintiffs was denied due process when it was barred from asserting its claims because of the earlier litigation. *Id.* at 802, 116 S.Ct. 1761. Because the plaintiffs in the suit before the Court were "best described as mere 'strangers' to one another," the Court was "unable to conclude that the [earlier] plaintiffs provided representation sufficient to make up for the fact that petitioners *neither participated in, nor had the opportunity to participate in,* the [earlier] action." *Id.* (internal citations omitted) (emphasis added).

Following *Richards,* the Supreme Court has since held that earlier litigation brought by parties with similar interests could not preclude subsequent plaintiffs from bringing their own lawsuit even though they were aware of the prior litigation and shared a lawyer with the earlier plaintiffs. *South Cent. Bell Tel. Co. v. Alabama,* 526 U.S. 160, 167–68, 119 S.Ct. 1180, 143 L.Ed.2d 258 (1999). These circumstances, explained the Court, "created no special representational relationship between the earlier and later plaintiffs." *Id.* at 168, 119 S.Ct. 1180. Rather, unless there was "'privity' or some other special relationship between the two sets of plaintiffs," the latter group could not be bound by the earlier judgment. *Id.; see also Favish v. Office of Indep. Counsel,* 217 F.3d 1168, 1171 (9th Cir.2000) (holding that, although the plaintiff had himself been counsel in a prior case involving identical claims, he could not be bound by the earlier judgment).

▮▮▮▮▮ *Richards* and its progeny thus reject the notion that the mere fact that a litigant in another case represented "essentially identical" interests to those of the plaintiff can pose a bar to a separate plaintiff pursuing his own cause of action. *Richards,* 517 U.S. at 796, 116 S.Ct. 1761; *see also Tice v. Am. Airlines Inc.,* 162 F.3d 966, 971–72 (7th Cir.1998) (discussing

*Richards* as "an example of the functional approach that is required for privity analysis and of the importance the Court attaches to assuring each person his or her own day in court"). Nor does due process permit the preclusion of a plaintiff's claim on the ground that he *could* have intervened in a state court litigant's action if he did not actually do so. As *Richards* explained, "[t]he general rule is that the law does not impose upon any person absolutely entitled to hearing the burden of voluntary intervention in a suit to which he is a stranger." 517 U.S. at 800 n. 5, 116 S.Ct. 1761 (internal quotation omitted). *Richards* thus confirms that a plaintiff who is a stranger to the parties involved in another lawsuit raising claims similar to his own cannot be bound directly by the judgment in that suit unless he receives notice of some intention in the earlier litigation to bind absent, similarly situated individuals. *Id.* at 799, 116 S.Ct. 1761.

The notion that a federal court plaintiff automatically loses his right to proceed in federal court if there is any state court case pending in which he could intervene to adjudicate his federal law issue cannot be squared with *Richards.* The consequence of such a required-intervention principle would be that entirely independent individuals could be bound by the forum choice of strangers, and could also be required to survey all litigation pending in the state to determine whether there is any case, however far from home, in which the same federal issue is being litigated. To put this concern in concrete terms, the viability of the constitutional challenges to the consent statute raised in this case by residents of Pima County could then turn on whether a party wishing to incorporate a community outside Phoenix has raised a similar constitutional challenge to the statute in state court in Maricopa County. Yet, under *Richards,* the potential Pima County plaintiff in such a suit cannot be

required so to intervene on pain of losing his right to litigate. Since, when *Younger* abstention applies, it does not merely delay, but precludes, the federal court litigation, *see supra* n. 6, application of *Younger* abstention to plaintiffs not party to the first-pending litigation would extinguish the second litigation to the same extent as would a claim preclusion rule, and would therefore raise due process concerns under *Richards. Richards* therefore confirms and explains the earlier holding in *Doran.*

### C. As a Rule, Plaintiffs Are Not Obligated to Exhaust State Remedies Before Suing in Federal Court.

 There is yet another reason why the district court's *Younger* intervention rule cannot stand: Requiring a plaintiff to intervene in state litigation brought by parties to which he is a stranger would contravene the principle that plaintiffs have no duty to exhaust their state administrative or judicial remedies before pursuing a § 1983 action in federal court. *See Patsy v. Bd. of Regents,* 457 U.S. 496, 516, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982) (holding that plaintiff in § 1983 race discrimination action could not be barred from federal court on the ground that she had failed to appeal her termination through an available state administrative proceeding); *cf. Steffel,* 415 U.S. at 472–73, 94 S.Ct. 1209 ("When federal claims are premised on 42 U.S.C. § 1983 ... we have not required exhaustion of state judicial or administrative remedies, recognizing the paramount role Congress has assigned to the federal courts to protect constitutional rights.").[16]

 The principle that § 1983 plaintiffs need not exhaust available state judicial or administrative remedies necessarily means, as the Third Circuit has aptly stated, that the mere availability of a state judicial proceeding that allows the opportunity to vindicate federal rights is insufficient to justify abstention under *Younger:* "[I]n the absence of a showing of some potential for *interference* with an ongoing state proceeding, *Younger* principles do not bar a Civil Rights Act plaintiff from going forward in a federal forum simply because there are unexhausted possibilities for state litigation over the same subject matter." *Marks,* 19 F.3d at 882–83 (emphasis added). There is no principled difference, with regard to the comity principles underlying *Younger,* between requiring a plaintiff to begin his or her own state court or administrative proceeding when that is possible and requiring the plaintiff to intervene in someone else's state court suit when that is possible. Either way, the requirement is inconsistent with the longstanding principle that § 1983 plaintiffs can ordinarily go forward in federal court if they choose to do so, and need not bring their cause to state court first.

### D. Younger Cannot Oust the Federal Court of Jurisdiction Over This Case Because the Plaintiffs Were Not Parties to the Litigation in State Court.

Taken together, then, the principles stated in *Hicks, Doran, Richards,* and *Patsy* make clear that, absent a relationship with a party to a state proceeding that implicates the exceptions delimited in *Hicks* and *Doran,* a federal plaintiff has no

---

**16.** There is no tension between the non-exhaustion rule and *Younger* abstention as properly applied because, as the Supreme Court has explained, the non-exhaustion rule is inapplicable to state administrative proceedings that are coercive rather than remedial in nature. *See Dayton Christian Schs.,* 477 U.S. at 627 n. 2, 106 S.Ct. 2718; *see also O'Neill,* 32 F.3d at 791 n. 13. This limitation on *Younger* abstention is consistent both with *NOPSI,* as discussed in detail above, and with the state criminal prosecution roots of the *Younger* doctrine.

obligation to intervene in state court litigation raising issues similar to those that the plaintiff wishes to raise in federal court. Several of our sister circuits have reached this same conclusion. *See Hoover v. Wagner*, 47 F.3d 845, 848 (7th Cir.1995) ("[N]othing in *Younger* or the cases following it suggests that persons claiming a violation of their federal rights have an obligation before turning to federal court to see whether there is some state court proceeding that they might join in order to present their federal claims there."); *FOCUS v. Allegheny Court of Common Pleas*, 75 F.3d 834, 844 (3d Cir.1996) ("[A] would-be federal plaintiff has no duty to attempt to intervene in an ongoing state suit in which he might be able to tender his constitutional issue...."); *Gottfried v. Med. Planning Servs. Inc.*, 142 F.3d 326, 329 (6th Cir.1998) ("*Younger* abstention cannot apply to one ... who is a stranger to the state proceeding.") (citing *Richards*, 517 U.S. at 796–800, 116 S.Ct. 1761).[17]

The district court relied on *Delta Dental*, 139 F.3d at 1297, for the proposition that *Younger* applies to this case because the plaintiffs could have intervened in the parallel state litigation. While *Delta Dental* does contain language that can be read broadly to suggest that a party to a federal case is subject to *Younger* abstention if the party could have intervened in the state action, the facts of the case demonstrate that Rockwell International Corporation, the federal party who was not involved in the state court proceedings, was situated quite similarly to the theater owners in *Hicks:* Rockwell's interest in the matter arose solely from its contractual relationship with Delta, because Rockwell had contracted with Delta to provide for its employees the dental plans that were under attack in the state court proceedings and wanted to continue to provide them. The relief Rockwell sought-an injunction against enforcement of the state court order through adjudicatory proceedings-would have directly interfered with-indeed, ended-the state court proceedings involving Delta. *Id.* at 1295 (finding that the "decision to assert jurisdiction would significantly impact the ongoing state administrative proceedings" because, "as to over one-half of Delta's policies [including those purchased by Rockwell], the district court effectively removed the case from the state proceedings"). Thus, the *result* in *Delta Dental* was consistent with our conclusion today that the opportunity to intervene in state court proceedings cannot be the basis for *Younger* abstention, the passing com-

---

17. We do not read the First Circuit's decision in *Casa Marie v. Superior Court*, 988 F.2d 252 (1st Cir.1993), as stating a contrary rule. *Casa Marie* applied *Younger* abstention to several residents of a home for the elderly who sued in federal court to enjoin a state-court cease-and-desist order against the operators of their home. *Id.* at 258, 266–69. Other residents of the home had intervened in the enforcement proceedings in the superior court. *Casa Marie* appears to have recognized that parallel lawsuits raising the same claims would not have implicated the *Younger* doctrine, *see id.* at 268 n. 19, but saw the case as one in which the federal court plaintiffs were seeking directly to restrain the enforcement of a state court judgment.

Similarly, while rejecting the premise that *Younger* abstention could bar the suit of plaintiffs who were not parties to a state court action, the Seventh Circuit held in *Hoover* that abstention was nonetheless justified for reasons of comity because the plaintiffs sought an injunction against a state judge and the Milwaukee police chief limiting enforcement of the state court's injunction constraining the activities of anti-abortion protesters-relief that was "at once an insult to the judicial and law enforcement officials ..., *an interference with an ongoing state court proceeding*, and an empty and mischievous command to these officials to avoid committing any errors in the enforcement of the injunction...." 47 F.3d at 851 (emphasis added); *see also Gottfried*, 142 F.3d at 331–32 (following *Hoover*).

ment in the opinion concerning the availability of intervention notwithstanding.[18]

Applying the *Hicks/Doran* analysis, we conclude that the district court erred in abstaining under *Younger* on the ground that the plaintiffs could have intervened in the state court litigation. Four residents of Tortolita are parties to the state court case; the plaintiffs here are also Tortolita residents. That these individuals share an interest in Tortolita's incorporation-even if their interests are "essentially identical," *Richards,* 517 U.S. at 796, 116 S.Ct. 1761is an insufficient ground to compel the federal plaintiffs to intervene in the state suit lest they forfeit their federal cause of action. Moreover, the would-be Town of Tortolita is a party to the state case, but the plaintiffs here are not officials of the Town or its incorporation committee, nor could entertaining this case in any way have precluded the state case from being litigated to completion. The *only* indication that the plaintiffs in this case are connected to the Tortolita litigants in state court is that they are represented by the same attorney, but such co-representation is, as the Supreme Court has definitively held, not sufficient to justify *Younger* abstention. *See Doran,* 422 U.S. at 928–29, 95 S.Ct. 2561; *cf. South Cent. Bell,* 526 U.S. at 168, 119 S.Ct. 1180.

In short, the plaintiffs' interests are not intertwined with those of the Tortolita parties to the state litigation in such a way as to come within the *Younger* exception to the general rule that non-parties to a state court action are entitled to litigate their own claims in federal as in state court.

## Conclusion

*Younger* abstention, as the Supreme Court has so often repeated, is a circumscribed exception to the overarching rule that the federal courts must exercise the jurisdiction granted to them by Congress under the Constitution. Our decision today restores our circuit's *Younger* jurisprudence to the careful boundaries delineated by the Supreme Court.

REVERSED AND REMANDED for further proceedings consistent with this opinion.

---

**18.** To the extent, however, that the observation at the end of the *Delta Dental* opinion regarding the availability of intervention, *id.* at 1297, suggests that the result in any way turned on that comment, we disapprove the suggestion.