NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name:  05a0004n.06
Filed:  January 3, 2005

No. 04-3112

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| **CITIZENS FOR A STRONG OHIO; OHIO CHAMBER OF COMMERCE; JOHN DOE**, a resident of the State of Ohio; **ALPHA CORPORATION; OMEGA CORPORATION**, | ) ) ) ) ) | |
| *Plaintiffs-Appellants*, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| v. | ) ) | |
| **BENJAMIN F. MARSH**, et al., in their official capacity as members of the Ohio Election Commission, et al. | ) ) ) ) | **O P I N I O N** |
| *Defendants-Appellees*. | ) | |

BEFORE:    RYAN, COLE, and ROGERS, Circuit Judges.

**R. GUY COLE, JR.,** Circuit Judge.  Plaintiffs-Appellants Citizens for a Strong Ohio, the

Ohio Chamber of Commerce, and various anonymous parties seek a declaratory judgment against

Defendants-Appellees members of the Ohio Election Commission in their official capacity, arguing

that certain Ohio elections laws as applied by the Ohio courts and the Ohio Election Commission

violate the First Amendment of the United States Constitution.  On a motion to dismiss, the district

court dismissed the case under *Younger v. Harris,* 401 U.S. 37 (1971) due to pending state action.

For the following reasons, we **AFFIRM** the dismissal of this case.

**I.  BACKGROUND**

Citizens for a Strong Ohio ("Citizens") is a nonprofit political action committee that sponsors a broad range of political activities, including, but not limited to, television advertising. The Ohio Chamber of Commerce ("Ohio Chamber") is a nonprofit corporation that pursues a broad range of activities in Ohio to "support Ohio businesses and the overall economic climate in Ohio." The Ohio Chamber is a major contributor to Citizens. Anonymous parties John Doe, Alpha Corporation, and Omega Corporation are, or wish to be, active in political issue activities, either by funding Citizens, or by funding their own television ads.

During the 2000 election cycle, Citizens sponsored various television ads that attacked Ohio Supreme Court Justice candidates Justice Alice Robie Resnick and then-Justice Timothy Black for connections to various campaign donors. *Common Cause/Ohio v. Ohio Elections Comm'n,* 779 N.E.2d 766, 768 (Ohio Ct. App. 2002); *Common Cause/Ohio v. United States Chamber of Commerce,* No. 2000E-058 (Ohio Election Comm'n Order of May 15, 2003). Such ads were purported by Citizens to be "issue ads" as defined in *Buckley v. Valeo,* 424 U.S. 1 (1976), because the ads did not contain any words "expressly exhorting particular electoral action," such as "vote for," "vote against," or "elect" a particular candidate.

On November 1, 2000, the Alliance for Democracy ("Alliance") filed a complaint with the Ohio Elections Commission ("OEC"), arguing that Citizens and other groups had violated Ohio Revised Code §§ 3517.21 and 3599.03.[1] Subsequently, the OEC dismissed the case for lack of

---

[1]The relevant texts of the Ohio election statutes enforced by the OEC in the underlying case are as follows:

(B) No person, during the course of any campaign for nomination or election to

jurisdiction. After affirmance by the Franklin County Common Pleas Court, the Ohio Court of

public office or office of a political party, by means of campaign materials, including sample ballots, an advertisement on radio or television or in a newspaper or periodical, a public speech, press release, or otherwise, shall knowingly and with intent to affect the outcome of such campaign do any of the following:

(9) Make a false statement concerning the voting record of a candidate or public official;

(10) Post, publish, circulate, distribute, or otherwise disseminate a false statement concerning a candidate, either knowing the same to be false or with reckless disregard of whether it was false or not, if the statement is designed to promote the election, nomination, or defeat of the candidate.

Ohio Rev. Code § 3517.21.

(A) Except to carry on activities specified in sections 3517.082 and 3599.031 of the Revised Code and except as provided in divisions (D), (E), and (F) of this section, no corporation, no nonprofit corporation, and no labor organization, directly or indirectly, shall pay or use, or offer, advise, consent, or agree to pay or use, the corporation's money or property, or the labor organization's money, including dues, initiation fees, or other assessments paid by members, or property, for or in aid of or opposition to a political party, a candidate for election or nomination to public office, a political action committee, a legislative campaign fund, or any organization that supports or opposes any such candidate, or for any partisan political purpose, shall violate any law requiring the filing of an affidavit or statement respecting such use of those funds, or shall pay or use the corporation's or labor organization's money for the expenses of a social fund-raising event for its political action committee if an employee's or labor organization member's right to attend such an event is predicated on the employee's or member's contribution to the corporation's or labor organization's political action committee.

Whoever violates division (A) of this section shall be fined not less than five hundred nor more than five thousand dollars.

Ohio Rev. Code § 3599.03.

Appeals, Tenth District, reversed, finding that the OEC did have jurisdiction. *See Common Cause/Ohio,* 779 N.E.2d at 771-72.

On remand, the OEC held Citizens' arguments regarding *Buckley's* limitations under the First Amendment were not applicable to the conduct and television ads before the Commission. The OEC then issued a subpoena to Citizens on September 3, 2003, seeking records of the direct donors of Citizens, and indirect donors of Citizens through the Ohio Chamber. Citizens refused to comply and Alliance brought enforcement proceedings in the Ohio courts. The Franklin County Court of Common Pleas then issued an enforcement order, subjecting Citizens to a $25,000 per day fine for failure to comply with the OEC subpoena, and ordered Citizens and the Ohio Chamber to produce the donor records. Citizens and the Ohio Chamber have so far refused to comply with the subpoena and enforcement order.

On July 3, 2003, the Plaintiffs-Appellants filed the instant suit in federal district court seeking a judgment declaring that the OEC's application of Ohio election laws violated the First Amendment and *Buckley*. Plaintiffs-Appellants further allege that the OEC's adverse decisions interpreting Ohio election laws are preventing them from engaging in future political activity and are having an adverse effect on fundraising. Defendant-Appellee OEC moved to dismiss under Fed. R. Civ. P. 12(b)(1) & 12(b)(6), arguing that *Younger v. Harris,* 401 U.S. 37 (1971), required federal court abstention. The district court granted the motion to dismiss on *Younger* grounds. Plaintiffs-Appellants timely appealed.

## II.  ANALYSIS

**A.     Jurisdiction**

This Court has jurisdiction over a final judgment of a district court under 28 U.S.C. § 1291. Subject matter jurisdiction for this case exists under 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201 & 2202.

**B.     Standard of Review**

A district court decision to abstain under *Younger* is reviewed *de novo.  See Chippewa Trading Co. v. Cox,* 365 F.3d 538, 541 (6th Cir. 2004); *Traughber v. Beuachane,* 760 F.2d 673, 676 (6th Cir. 1985) ("Because theories of state and federal law, and expressions of federalism and comity, are so interrelated in the decision to abstain such dispositions are elevated to a level of importance dictating *de novo* appellate review.").

As the district court dismissed this case on a Rule 12(b) motion to dismiss, this Court must presume all factual allegations in the complaint are true, and draw all reasonable inferences in favor of the non-moving party.  *See Mayer v. Mylod,* 988 F.2d 635, 638 (6th Cir. 1993).

**C.     *Younger* Abstention**

*1. Law*

Under the now familiar facts of *Younger,* various parties sought to enjoin the Los Angeles County District Attorney from enforcing a California law that prevented the teaching of socialist or communist doctrine.  One of the parties had an indictment against him.  After a three-judge panel enjoined the District Attorney from enforcing the Act, the Supreme Court reversed, noting that such actions violated public policy:

> The precise reasons for this longstanding public policy against federal court interference with state court proceedings have never been specifically identified but the primary sources of the policy are plain. One is the basic doctrine of equity jurisprudence that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief . . . . This underlying reason for restraining courts of equity from interfering with criminal prosecutions is reinforced by an even more vital consideration, the notion of 'comity,' that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways. This, perhaps for lack of a better and clearer way to describe it, is referred to by many as 'Our Federalism,' and one familiar with the profound debates that ushered our Federal Constitution into existence is bound to respect those who remain loyal to the ideals and dreams of 'Our Federalism.'

*Younger,* 401 U.S. at 43-44.

*Younger* has been extended to certain state court civil actions. *See Huffman v. Pursue, Ltd.,* 420 U.S. 592, 603-05 (1975) (applying *Younger* abstention to state court civil nuisance action against an adult theater). The Supreme Court has also applied *Younger* to state court administrative proceedings. *Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.,* 477 U.S. 619, 620, 627-28 (1986) (holding *Younger* applies to a sex discrimination claim in religious schools before the Ohio Civil Rights Commission); *Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 432-34 (1982) (holding *Younger* applies to New Jersey bar ethics proceedings against a lawyer for criticizing a state court judge).

More specifically, several federal district courts, including two in this circuit, have applied *Younger* abstention to hearings before various state or local elections board or commissions. *Chamber of Commerce of the United States v. Ohio Elections Comm'n,* 135 F. Supp. 2d 857 (S.D.

Ohio 2001); *Walter v. Cincione,* No. C-2-00-1070, 2000 WL 1505945 (S.D. Ohio Oct. 6, 2000); *see also Scolaro v. District of Columbia Bd. of Elections & Ethics,* 104 F. Supp. 2d 18, 23-24 (D.D.C. 2000) (holding *Younger* abstention applicable in local election board hearing regarding voter intimidation claims against losing candidate); *Wisc. Mfrs. & Commerce v. Wisc. Elections Bd.,* 978 F. Supp. 1200, 1211 (W.D. Wisc. 1997) (holding *Younger* abstention applicable in state board of elections proceeding against a chamber of commerce for various political issue advertisements sponsored by corporations).

Under *Younger* and progeny, a federal court must abstain under the following three-part test. First, this Court must determine whether there are "ongoing state judicial proceedings." *Fieger v. Thomas,* 74 F.3d 740, 744 (6th Cir. 1996). Second, a court "must find that the state has an important interest in regulating the subject matter of the claim." *Id.* at 745. Third, there must be "an adequate opportunity in the state proceedings to raise constitutional challenges." *Id.*

*2. Citizens and the Ohio Chamber*

Applying these principles to the instant case, Citizens and the Ohio Chamber do not dispute that they are subject to ongoing hearings before the OEC. Indeed, both Citizens and the Ohio Chamber are subject to a subpoena from the OEC and a related enforcement proceeding in state court. Nor is it disputed that the OEC hearings are judicial in nature. *See Middlesex County Ethics Comm'n,* 457 U.S. at 433 (noting that state administrative proceedings must be "judicial in nature" for the purposes of *Younger* abstention). OEC hearings are initiated by a complaint, parties may present and cross-examine evidence, and a decision or opinion is issued, often with an explanation. Furthermore, unsuccessful parties may appeal the OEC's decision in the Franklin County Court of

Common Pleas, and if unsuccessful there, may seek further review in Ohio appellate courts. *See*

Ohio Rev. Code § 119.12.

Regarding the second prong, Ohio and the OEC's oversight of state and local elections is

clearly an important state interest.

Regarding the third prong, litigants before the OEC have an adequate opportunity to raise

constitutional claims. Citizens and the Ohio Chamber do not contend that the OEC has neither the

power or expertise necessary to review First Amendment or other federal constitutional arguments.

Indeed, the OEC has previously addressed and rejected constitutional claims identical to the

arguments raised here, in related litigation. *See Common Cause/Ohio v. United States Chamber of*

*Commerce,* No. 2000E-058 (Ohio Election Comm'n Order of May 15, 2003).

Accordingly, the district court properly dismissed Citizens and the Ohio Chamber.

### 3. Anonymous Plaintiffs-Appellants

In response, Plaintiffs-Appellants claim that *Younger* is inapplicable because anonymous

corporate and individual appellants are not parties to the OEC proceedings. Plaintiffs-Appellants

argue that *Younger* abstention does not apply to parties who are not subject to pending state court

proceedings. *See Gottfried v. Med. Planning Servs.,* 142 F.3d 326, 329 (6th Cir. 1998) (holding that

where a litigant is not a subject to a pending prosecution or civil enforcement action, *Younger*

abstention does not apply). Plaintiffs-Appellants note that such a rule extends even where litigants

have a "common set of issues and concerns." As support, Plaintiffs-Appellants cite *Doran v. Salem*

*Inn, Inc.,* 422 U.S. 922, 928-29 (1975), which states:

> While there plainly may be some circumstances in which legally distinct parties are so closely related that they should all be subject to *Younger* considerations which govern any one of them, this is not such a case; --while respondents are represented by common counsel, and have similar business activities and problems, they are apparently unrelated in terms of ownership, control, and management. We thus think that each of these respondents should be placed in the position required by our cases as if that respondent stood alone.

Since the anonymous parties are legally unrelated entities, without shared ownership or control, Plaintiffs-Appellants argue that *Younger* abstention is inappropriate.

By contrast, the OEC argues that *Younger* abstention applies to non-parties to a state court proceeding where the interests are inextricably intertwined with those of litigants who are parties in state court. As support, the OEC cites to *Hicks v. Miranda,* 422 U.S. 332 (1975). *Hicks* involved a showing of the adult movie "Deep Throat." *Id.* at 334. In state court, employees of the theater showing the film were charged with violating state obscenity laws. *Id.* at 335. The owner of the theater then brought a federal suit seeking relief. The Supreme Court held that "[the owner and holding company's] interests and those of their employees were intertwined" to the extent that the district court should have abstained under *Younger.* *Id.* at 348. The Court also considered it an important factor that "the federal action sought to interfere with the pending state prosecution." *Id.* at 349.

*Doran* and *Hicks* were synthesized into a broader principle in *Spargo v. N.Y. State Comm'n on Judicial Conduct,* 351 F.3d 65 (2d Cir. 2003). In that case, a judicial candidate was subject to a state disciplinary hearing for violations of judicial ethics rules during his campaign. *Id.* at 68-69. Two political supporters brought suit in federal court seeking to declare those rules unconstitutional, effectively preventing the state disciplinary hearing. *Id.* at 70. The Second Circuit held that

*Younger* required federal abstention. The *Spargo* Court noted that while *Doran* and *Hicks* "arguably focus on the fact of joint ownership and control, neither decision limits the applicability of *Younger* to cases where the parties are financially related or linked by mutual management." *Id.* at 82. Rather, *Younger* abstention may also be appropriate for non-parties to the state action when "[s]uccess on the merits . . . is entirely derivative" of the rights of the state action parties. *Id.* at 83 (internal quotes and citation omitted). Furthermore, non-parties to the state action must "seek to directly interfere with the pending disciplinary proceeding." *Id.* at 85. Since the speech rights of the political supporters of the judicial candidate were completely derivative of the judicial candidate himself, and the political supporters sought to interfere with the state disciplinary proceedings, the Second Circuit held *Younger* abstention applicable. *Id.*

The application of *Younger* abstention to anonymous, legally distinct entities seeking to contribute to a political action committee is not unknown in the federal courts. Indeed, at least one district court dealt with an essentially identical case in *Wisconsin Manufacturer & Commerce v. Wisconsin Elections Board,* 978 F. Supp. 1200 (W.D. Wisc. 1997). There, the Wisconsin Board of Elections prohibited various organizations from sponsoring attack ads against certain legislators. *See id.* at 1203. A chamber of commerce, an affiliated political action committee, and two anonymous corporations sought a declaratory judgment that the state board of elections had violated the First Amendment and *Buckley*. The district court dismissed the case under *Younger*. In so holding, the district court noted that the two anonymous corporations, ABC Corp. and XYZ Corp., were donors of the lead plaintiff – a trade organization. *See id.* Though the anonymous corporations were not parties to the hearing before the Wisconsin Elections Board, the district court

held that their interests were inextricably intertwined with a trade organization which was before the Board, and *Younger* therefore applied. *See id.* at 1211.

In their complaint in the instant case, Plaintiffs-Appellants alleged that "[d]uring 2000, Alpha Corporation chose to contribute to [Citizens] in order to support its issue advocacy efforts. Alpha Corporation and Omega Corporation desire to support [Citizens], and other issue advocacy efforts, in the future." Therefore, the rights of Alpha Corporation and Omega Corporation, vis-a-vis this lawsuit, are merely derivative of the rights of Citizens and the Ohio Chamber to engage in the political activity complained of in the state action. Furthermore, Alpha Corporation and Omega Corporation are clearly seeking to interfere with the pending state action. Although Plaintiffs-Appellants did not seek an injunction against the enforcement of the subpoena against Citizens and Ohio Chamber, the effect of the declaration would be to prevent the enforcement of that subpoena and interfere directly with the pending state proceedings.

Accordingly, the district court properly dismissed Alpha Corporation and Omega Corporation.

The anonymous individual party, John Doe, presents a more difficult case. Here, allegations in the Complaint simply state that John Doe has contributed to issue advocacy organizations in the past which publish political advertisements that do not expressly advocate the election or defeat of a candidate. John Doe further wishes to continue contributing to such independent issue advocacy organizations, but refuses to do so, given the OEC's current request to subpoena the donor lists of Citizens and the Ohio Chamber.

A ruling by this court that abstention is not appropriate with respect to John Doe would create an incentive to find "straw men" in future actions that seek to interfere with pending state court proceedings. Simply by alleging very few facts about who John Doe is and what kind of relationship he has to Citizens and Ohio Chamber, the plaintiffs could ensure that at least one claim will go forward in federal court. We should be careful not to create such an easy way to circumvent *Younger*.

John Doe has not alleged sufficient facts to be permitted to proceed with his claim. It is a general rule that a complaint *must* state the names of the parties. Fed. R. Civ. P. 10(a). Plaintiffs are permitted to proceed under pseudonyms only under certain circumstances that justify an exception to this rule. *Doe v. Porter*, 370 F.3d 558, 560 (6th Cir. 2004). When determining whether such an exception is justified, a court may consider, among others, the following factors:

> (1) whether the plaintiffs seeking anonymity are suing to challenge governmental activity; (2) whether prosecution of the suit will compel the plaintiffs to disclose information of the utmost intimacy; (3) whether the litigation compels plaintiffs to disclose an intention to violate the law, thereby risking criminal prosecution; and (4) whether the plaintiffs are children.

*Id.* at 560 (internal quotes omitted). It is also relevant to consider whether the defendants are being forced to proceed with insufficient information to present their arguments against the plaintiff's case. *See id.* at 561.

Ordinarily, a plaintiff wishing to proceed anonymously files a protective order that allows him or her to proceed under a pseudonym. *See id.* at 560. In this case, however, the docket sheet does not reflect any motion or proceeding dealing with whether the three anonymous plaintiffs could

proceed under pseudonyms. Failure to seek permission to proceed under a pseudonym is fatal to an anonymous plaintiff's case, because, as the Tenth Circuit has held, "the federal courts lack jurisdiction over the unnamed parties, as a case has not been commenced with respect to them." *Nat'l Commodity & Barter Ass'n, Nat'l Commodity Exch. v. Gibbs,* 886 F.2d 1240, 1245 (10th Cir. 1989).

Accordingly, the district court did not err in dismissing John Doe.

*4. Prospective Relief*

Plaintiffs-Appellants also argue that *Younger* is not applicable, as they only seek prospective relief. *See Wooley v. Maynard,* 430 U.S. 705, 710-12 (1977) (noting that since only prospective relief was sought from criminal prosecutions of defacing New Hampshire state motto on license plate, and all such criminal prosecutions were completed and not appealed, *Younger* abstention was not applicable). Plaintiffs-Appellants assert that they do not seek an injunction preventing the ongoing OEC action. Rather, Plaintiffs-Appellants claim that since the OEC has issued its decision, they only simply seek relief from prospective, future activity.

This argument is without merit. It is well-settled that a declaration as to rights during the pendency of state action has the same effect as an injunction enjoining state action. *See Younger,* 401 U.S. at 41 n.2 (noting "declaratory relief is also improper when a prosecution involving the challenged statute is pending in state court at the time the federal suit is initiated"); *Samuels v. Mackell,* 401 U.S. 66, 73 (1971) (noting that the "practical effect of the two forms of relief [injunction or declaration] will be virtually identical").

Here, a declaration that the OEC violated the First Amendment in its application of Ohio election laws will, of course, result in prospective relief for the Plaintiffs-Appellants. However, such a declaration will also result in interference with the current OEC action against Citizens and the Ohio Chamber. Such interference is clearly inappropriate under *Younger* and progeny.

### III. CONCLUSION

For the foregoing reasons we **AFFIRM** the district court's dismissal of this case.