# United States Court of Appeals
## For the First Circuit

No. 11-1441

MASSACHUSETTS DELIVERY ASSOCIATION,

Plaintiff, Appellant,

v.

MARTHA COAKLEY, in her official capacity
as Attorney General of the Commonwealth of Massachusetts,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Denise J. Casper, U.S. District Judge]

Before

Lynch, Chief Judge,
Stahl and Lipez, Circuit Judges.

David C. Casey, with whom Walter C. Hunter, Carie A. Torrence, Vanessa K. Hackett, and Littler Mendelson, P.C. were on brief, for appellant.
Steven A. Pletcher, Lynne D. Lidke, Braden K. Core, and Scopelitis, Garvin, Light, Hanson & Feary, P.C. for Messenger Courier Association of America and Air and Expedited Motor Carrier Association, amici curiae.
Douglas S. Martland, Assistant Attorney General, with whom Pierce O. Cray, Assistant Attorney General, Kate J. Fitzpatrick, Assistant Attorney General, and Martha Coakley, Attorney General, were on brief, for appellee.
Harold L. Lichten, Shannon Liss-Riordan, Michael S. Rabieh, and Lichten & Liss-Riordan, P.C., for Stephen Reynolds, amicus curiae.

January 20, 2012

**LYNCH, Chief Judge.**  The issue on appeal is whether abstention under Younger v. Harris, 401 U.S. 37 (1971), is proper in a federal court civil rights suit brought against the Massachusetts Attorney General by a business trade association, which is not itself a party to any relevant state litigation, and where three of its forty-plus members are defendants in ongoing state civil proceedings brought not by the Attorney General but by private parties.  The district court found that Younger abstention was appropriate in these circumstances.  Mass. Delivery Ass'n v. Coakley, 797 F. Supp. 2d 164, 176 (D. Mass. 2011).  We reverse that determination and hold that Younger abstention is inappropriate and the federal courts should exercise jurisdiction.  We remand to the district court for further proceedings consistent with this opinion.

I.

The suit by the Massachusetts Delivery Association (MDA) asserts that a state law is pre-empted as to motor carriers under the Federal Aviation Administration Authorization Act of 1994 (FAAAA), Pub. L. No. 103-305, 108 Stat. 1569 (codified in scattered sections of 49 U.S.C.), which expressly pre-empts state attempts to regulate "a price, route, or service of any motor carrier," 49 U.S.C. § 14501(c)(1).  The MDA claims that the state law at issue here is such a regulation and is unconstitutional under the Supremacy Clause.  The challenged state law is a portion of a

Massachusetts statute, Mass. Gen. Laws ch. 149, § 148B(a)(2), which requires that an individual performing a service for another be classified as an employee unless "the service is performed outside the usual course of the business of the employer." The MDA also asserts that the state statute imposes an undue burden which violates the Commerce Clause. We describe these state and federal statutes before turning to the Younger abstention issue.

A.        The Massachusetts Statute Defining Employees

The state law challenged as unconstitutional is part of a state statutory scheme meant to enhance protections for those whom the state considers to be "employees," in contrast to independent contractors. See Somers v. Converged Access, Inc., 911 N.E.2d 739, 749 (Mass. 2009). This provision was initially enacted in 1990 as "[an act] enhancing the enforcement of labor laws." 1990 Mass. Legis. Serv. 464. Amended in 2004, the law currently provides:

> (a) For the purpose of this chapter and chapter 151, an individual performing any service, except as authorized under this chapter, shall be considered to be an employee under those chapters unless:
>
>> (1) the individual is free from control and direction in connection with the performance of the service, both under his contract for the performance of service and in fact; and
>>
>> (2) the service is performed outside the usual course of the business of the employer; and,

(3) the individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed.

Mass. Gen. Laws ch. 149, § 148B.[1]

Subsection (a) provides that individuals performing services shall be deemed employees, unless all of the requirements outlined in the three subsections are satisfied. See Somers, 911 N.E.2d at 747 ("The failure of the employer to prove all three criteria set forth above suffices to establish that the individual in question is an employee.").

Section 148B governs whether an individual is deemed an employee for purposes of various wage and employment laws, chapters 62B, 149, 151 and 152 of the Massachusetts General Laws.[2] See Mass. Gen. Laws ch. 149, § 148B(a), (d). The Massachusetts Supreme

---

[1] The 2004 amendment to this statute altered, among other provisions, the second prong of the test, which is the basis of the MDA's pre-emption claim. Before this amendment, the second prong of the test read "and such service is performed either outside the usual course of the business for which the service is performed or is performed outside of all places of business of the enterprise." Mass. Gen. Laws ch. 149, § 148B (2003).

[2] Chapter 62B is entitled "Withholding of Taxes on Wages and Declaration of Estimated Income Tax."
Chapter 149 is entitled "Labor and Industries" and contains a wide variety of provisions relevant to the employment relationship, including a requirement that employees be paid weekly or bi-weekly. See Mass. Gen. Laws ch. 149, § 148.
Chapter 151 is entitled "Minimum Fair Wages," and contains a variety of provisions establishing minimum wage and overtime pay requirements. See, e.g., Mass. Gen. Laws ch. 151, §§ 1, 1A.
Chapter 152 is entitled "Workers' Compensation" and addresses that subject.

Judicial Court has said that "[a] legislative purpose behind the independent contractor statute is to protect employees from being deprived of the benefits enjoyed by employees through their misclassification as independent contractors." Somers, 911 N.E.2d at 749.

If an employing entity improperly classifies an employee as an independent contractor under § 148B,[3] a variety of sanctions are available, including civil and criminal penalties to be assessed by the state. Mass. Gen. Laws ch. 149, §§ 27C, 148B(d). But the state is not always involved in disputes about compliance with § 148B. Independently, employees who allege improper classification as independent contractors may bring their own actions for injunctive relief and treble damages, and may bring such suits as class actions. Mass. Gen. Laws ch. 149, § 150; see also Somers, 911 N.E.2d at 748. Before bringing suit, such employees must first file a complaint with the Attorney General;

---

[3] Improper classification under § 148B, of itself, does not appear to give rise to a cause of action; instead, the statute seems to require that an improper classification result in a violation of one of the referenced chapters before an entity may be sued under § 148B. Only employers who "fail[] to properly classify an individual as an employee according to this section and in so doing fail[] to comply, in any respect, with chapter 149 or [certain sections of] chapter 151, or chapter 62B . . . shall be subject to all of the criminal and civil remedies" provided by the statute. Mass. Gen. Laws ch. 149, § 148B(d). Similarly, employers who "fail[] to properly classify an individual as an employee according to this section and in so doing violate[] chapter 152 . . . shall be subject to all of the civil remedies" provided by the statute. Id.

-6-

employees must wait to file suit in court until 90 days after filing such a complaint, although they may file earlier if the Attorney General consents in writing. Mass. Gen. Laws ch. 149, § 150. When an employee brings suit, he "institute[s] and prosecute[s] [it] in his own name and on his own behalf, or for himself and others similarly situated, [as] a civil action." Id. He does not bring suit in the name of the state. Nor does he have the range of remedies available to the Attorney General.

The MDA alleges that its members must change their fundamental business model -- the use of independent contractor delivery drivers -- to comply with the state statute or risk penalties. No other state, the MDA alleges, has made unlawful this use of the historic business model. The Massachusetts law, it says, would force motor carriers to use only employees as delivery drivers, which would drive up costs, and adversely affect prices, routes, and services. Not only is the law expressly pre-empted but it also imposes an impermissible burden on interstate commerce, according to the MDA.

B.     The FAAAA's Pre-Emption Provision and the Commerce Clause Issue

For businesses in interstate commerce involving transportation, Congress, concerned both with the states imposing undue burdens and with the national interest in uniform rules, has expressly preempted certain state regulations. See, e.g., 49 U.S.C. § 14501(a)(1) (pre-emption of state regulations relating to

motor carriers of passengers); id. § 14501(b)(1) (pre-emption of state regulations relating to freight forwarders and brokers); id. § 14501(d)(1) (pre-emption of state regulations relating to pre-arranged ground transportation); id. § 41713 (pre-emption of state regulations relating to air carriers).

Congress enacted such a pre-emption provision as part of the FAAAA:

> Except as provided in paragraphs (2) and (3), a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier (other than a carrier affiliated with a direct air carrier covered by section 41713(b)(4)) or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.

Id. § 14501(c)(1). "Motor carrier" is defined as "a person providing motor vehicle transportation for compensation." Id. § 13102(14).

In enacting this provision, Congress found that state regulation of intrastate transportation of property had "imposed an unreasonable burden on interstate commerce," as well as "an unreasonable cost on the American consumers," and thus "certain aspects of the State regulatory process should be preempted." FAAAA § 601(a), 108 Stat. at 1605. The conference report explained that "preemption legislation is in the public interest as well as necessary to facilitate interstate commerce. State economic

regulation of motor carrier operations causes significant inefficiencies, increased costs, reduction of competition, inhibition of innovation and technology and curtails the expansion of markets." H.R. Rep. No. 103-677 (1994) (Conf. Rep.).

This federal pre-emption provision relating to motor carriers is substantially identical to a provision pre-empting state regulation of air carriers enacted in 1978, 49 U.S.C. § 41713, and the two statutes are often interpreted in pari materia. See DiFiore v. Am. Airlines, Inc., 646 F.3d 81, 85-86 & n.4 (1st Cir. 2011), cert. denied, No. 11-221, 2011 WL 3794274 (U.S. Nov. 28, 2011). These pre-emption provisions are "broad but vague," and have been the subject of considerable litigation. Id. at 86.

## II.

The MDA is a non-profit trade organization formed to support businesses involved in the delivery service industry. The MDA has over forty member businesses,[4] which are entities that provide same-day delivery services and often engage delivery drivers they consider to be independent contractors.

The MDA brought suit against Martha Coakley, the Attorney General of Massachusetts, in her official capacity, on September 7,

---

[4] Apparently, the MDA has not publicly disclosed a list of its members, but it represents that it has forty-plus members, and the Attorney General does not dispute this representation. See Mass. Delivery Ass'n v. Coakley, 797 F. Supp. 2d 164, 169 (D. Mass. 2011).

2010.  The complaint, as amended, alleges that § 148B(a)(2) would require delivery companies to classify their drivers as employees, rather than independent contractors, and that this would have a variety of dramatic effects on the operations of the delivery companies' businesses, including driving some out of business and increasing costs to consumers.  The MDA alleges that subsection (a)(2) of the state law is pre-empted under the FAAAA and the Supremacy Clause.

In a separate theory of unconstitutionality, the MDA's complaint also alleges that the relevant portion of the statute imposes an undue burden on interstate commerce, in violation of the Commerce Clause.  The complaint requests a declaratory judgment that subsection (a)(2) of the Massachusetts law is pre-empted by the FAAAA and the Commerce Clause with respect to motor carriers engaged in interstate commerce, and a permanent injunction preventing the Attorney General from enforcing that prong in the future with respect to such motor carriers.

On October 22, 2010, the Attorney General filed a motion to dismiss the complaint on the basis of Younger abstention.  The crux of the Attorney General's argument was that three businesses which are MDA members were defendants in ongoing state civil suits brought by private parties under § 148B,[5] and that the MDA was an

---

[5] Those three actions are <u>Reynolds</u> v. <u>City Express, Inc.</u>, SUCV 2010-02655 (Suffolk Cnty. Super. Ct., filed July 1, 2010); <u>Okeke</u> v. <u>Dynamex Operations E., Inc.</u>, MICV 2010-02017 (Middlesex

-10-

"alter ego" of these defendants. The MDA, it is alleged, impermissibly sought to open a "second front" on the pre-emption question, and as a result Younger abstention was required.

The parties agree that there is no state litigation against the MDA on this issue and that the three state suits are the only ongoing state proceedings involving any of the MDA's members. One of the MDA's four board members (and its vice president) is the president and director of City Express, an entity which is one of the state-court defendants.

The MDA opposed the motion, raising a variety of independent arguments as to why Younger abstention was inapplicable. The first several arguments, which revolve around the postures and the parties in this and in the state suits, are that (1) Younger does not apply where the state suits are civil actions brought by private parties, (2) the relief sought by the MDA would not substantially interfere with the ongoing state proceedings, (3) the MDA is not a party to any ongoing state proceedings, and is not sufficiently closely related to any such

---

Cnty. Super. Ct., filed May 26, 2010); Reynolds v. World Courier Ground, Inc., NOCV 2010-00914 (Norfolk Cnty. Super. Ct., filed May 14, 2010). There are also a variety of other state suits against motor carriers that are not MDA members which have been brought under § 148B. See, e.g., Oliveira v. Advanced Delivery Sys., Inc., 27 Mass. L. Rep. 402, 2010 WL 4071360 (Mass. Super. Ct. July 16, 2010); Derochers v. Staples, Inc., 28 Mass. L. Rep. 261, 2010 WL 6576214 (Mass. Super. Ct. June 8, 2010); Fucci v. E. Connection Operating, Inc., No. 2008-2659, 2009 Mass. Super. LEXIS 421 (Mass. Super. Ct. Sept. 21, 2009).

-11-

party to be treated as the same for Younger purposes, and (4) the MDA is neither required to nor would it have any opportunity to raise its pre-emption challenge in the state suits. In addition, the MDA makes other arguments: (5) the Commonwealth's interest in the state suits is insufficient to justify Younger abstention, (6) because it is "readily apparent" that § 148B is pre-empted, an exception to Younger applies, and (7) the penalties imposed for violations of § 148B provide another exception to Younger.

The district court granted the Attorney General's motion to dismiss on Younger grounds. Mass. Delivery Ass'n, 797 F. Supp. 2d at 176. The MDA appealed.

### III.

Our review of whether the conditions for Younger abstention are met is de novo.[6] Rio Grande Cmty. Health Ctr., Inc. v. Rullan, 397 F.3d 56, 68 (1st Cir. 2005). The issues raised here are pure issues of law, which also invoke de novo review. R.I.

---

[6] The district court noted that there is some dispute among the district courts in this circuit as to whether a Younger motion to dismiss is properly viewed as a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, or a Rule 12(b)(6) motion to dismiss for failure to state a claim. Mass. Delivery Ass'n, 797 F. Supp. 2d at 168 n.2. A primary difference between the two is that, under Rule 12(b)(1), the district court may weigh the evidence and make factual determinations, if necessary, to determine whether it has jurisdiction to hear the case. Torres-Negrón v. J & N Records, LLC, 504 F.3d 151, 163 (1st Cir. 2007). Here, however, the district court did not engage in any weighing of the evidence, but rather based its decision on the undisputed facts, namely the complaint and certain public documents. Mass. Delivery Ass'n, 797 F. Supp. 2d at 168 n.2. As a result, we need not resolve this question here.

Hospitality Ass'n v. City of Providence, No. 11-1415, 2011 WL 6004385, at *3 (1st Cir. Dec. 2, 2011) (to be published in F.3d).

A.       Overview of *Younger* Abstention

The normal rule is that the federal courts must exercise their jurisdiction and decide cases brought before them.  See, e.g., Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716 (1996) ("We have often acknowledged that federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress.").  There are limited exceptions to that rule; one is the Younger doctrine.  See generally id. at 716-17 (describing the various types of abstention, including Younger abstention).  The doctrine is judicially created and takes its name from Younger v. Harris, a case involving an underlying state criminal prosecution against a defendant who then filed suit in federal court to attack the state statute on which his criminal prosecution was brought. 401 U.S. at 38-39.

The Younger doctrine reflects a "longstanding public policy against federal court interference with state court proceedings," and is based on two conceptual foundations.  Id. at 43.  First, it is based on a notion that "courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied relief."  Id. at 43-44.  This concern applies to injunctive relief and also, at

-13-

least typically, to requests for declaratory relief, where the same parties are involved and the federal plaintiff is a state-court party. See Samuels v. Mackell, 401 U.S. 66, 73 (1971) ("Ordinarily . . . the practical effect of the two forms of relief will be virtually identical . . . ."); Rio Grande, 397 F.3d at 70-71. Second, and more importantly, Younger rests upon basic notions of federalism and comity, and also on a related desire to prevent unnecessary duplication of legal proceedings. Younger, 401 U.S. at 44.

Younger abstention has extended far beyond its original roots of non-interference with state criminal prosecutions. In Middlesex County Ethics Committee v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982), the Court set forth three general guidelines, which we have since described in a series of cases: Younger applies "when the requested relief would interfere (1) with an ongoing state judicial proceeding; (2) that implicates an important state interest; and (3) that provides an adequate opportunity for the federal plaintiff to advance his federal constitutional challenge." Rossi v. Gemma, 489 F.3d 26, 34-35 (1st Cir. 2007).

The question of whether "interference" exists is a "threshold issue." Id. at 35; see also Rio Grande, 397 F.3d at 70 ("Younger applies only when the relief asked of the federal court 'interfere[s]' with the state proceedings." (alteration in original) (quoting Quackenbush, 517 U.S. at 716)); Green v. City of

Tucson, 255 F.3d 1086, 1093-94 (9th Cir. 2001) (en banc) (explaining that Younger requires not only that the three guidelines be satisfied, but also that "the federal relief sought would interfere in some manner in the state court litigation"), limited by Gilbertson v. Albright, 381 F.3d 965 (9th Cir. 2004) (en banc).

The first prong, that there must be an "ongoing state judicial proceeding," in actuality involves assessment of a complex of issues. The proceeding must be "judicial in nature," as opposed to, for instance, legislative proceedings. New Orleans Pub. Serv., Inc. v. Council of New Orleans (NOPSI), 491 U.S. 350, 370 (1989). Even then, Younger does not extend to all judicial proceedings. While the doctrine originated in the context of ongoing criminal proceedings, see Younger, 401 U.S. at 38-39, it has been extended by the Court to only two types of civil proceedings: (1) enforcement actions to which the state is a party, Huffman v. Pursue, Ltd., 420 U.S. 592, 604 (1975) (explaining that a state-initiated nuisance proceeding "is more akin to a criminal prosecution than are most civil cases"), and (2) civil actions involving "administration of a State's judicial system," Juidice v. Vail, 430 U.S. 327, 335 (1977), such as a court's contempt proceedings, id., and the ability to enforce a valid state-court judgment, Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 13 (1987).

Moreover, the state judicial proceeding must be "ongoing," which involves an assessment of which suits were filed when, and how far along those suits have progressed. See Hicks v. Miranda, 422 U.S. 332, 349 (1975) (holding that even where a federal suit is filed first, if the state suit is brought before "any proceedings of substance on the merits have taken place in the federal court, the principles of Younger v. Harris should apply in full force").

Importantly, Younger does not typically apply where the federal-court plaintiff is not itself a party to the state-court proceedings. The Supreme Court made this clear in Doran v. Salem Inn, Inc., 422 U.S. 922, 928-29 (1975), where it held that while two corporations (who were not state-court defendants) had similar interests and were somewhat related to a third corporation which was a state-court defendant, the two were not barred by Younger from bringing suit.

The second prong requires that the state-court proceedings "implicate important state interests." Middlesex Cnty., 457 U.S. at 432. This too may involve subsidiary inquiries, which we need not explore here. The third prong requires that there be "an adequate opportunity in the state proceedings to raise" the federal issue. Id.

Even if all these requirements are met, and they have not been here, abstention is still not proper in certain "extraordinary

-16-

circumstances" or "unusual situations." Younger, 401 U.S. at 53-54. The Supreme Court has indicated that a "facially conclusive claim" of pre-emption is "[p]erhaps" such an exception to the Younger doctrine. NOPSI, 491 U.S. at 367. We have held that such a facially conclusive claim is a valid exception. Colonial Life & Accident Ins. Co. v. Medley, 572 F.3d 22, 26 (1st Cir. 2009) (citing Chaulk Servs., Inc. v. Mass. Comm'n Against Discrimination, 70 F.3d 1361, 1370 (1st Cir. 1995)), cert. denied, 130 S. Ct. 1059 (2010). We need not get into this branch of the analysis here.

B.        Application of *Younger*

We conclude that Younger does not permit the state Attorney General to succeed in this attempt to preclude federal court examination of the constitutionality of a state statute. The MDA has a right to pursue its suit in federal court.

The Attorney General pushes the Younger doctrine further than the Supreme Court or this court has ever extended it. While it is not an absolute that because the MDA is not a party to the state-court proceedings it may not be subjected to Younger, it would be an unjustified extension of Younger to treat the MDA as if it were such a party. At the very least, such an extension of Younger cannot be justified because there is no interference. Our holding is also consistent with the caselaw of the other circuits. To the extent the circuits have permitted non-parties to state proceedings to nevertheless be subject to Younger under some

-17-

circumstances, those circumstances are not present here. For related reasons specified below, federal court adjudication of this suit would not interfere with the ongoing state proceedings. We need not address the other arguments the MDA makes.

1. *Younger*'s Application to Non-Parties to the State-Court Proceedings

The Attorney General's argument is based on the premise that the MDA and any of its individual members should be treated, for Younger purposes, as standing in each other's shoes.

Distinct parties are typically treated separately for purposes of Younger abstention. This is illustrated by Steffel v. Thompson, 415 U.S. 452 (1974). There, the Court held that when two protesters were warned to discontinue handbilling or they would be arrested, and one continued and was arrested and prosecuted, and the other was not arrested but could fear prosecution, the latter could maintain a federal suit and was not barred by Younger. The Court explained that "[t]he pending prosecution of petitioner's handbilling companion does not affect petitioner's action for declaratory relief." Id. at 471 n.19. This conclusion accords with the Court's statement about "our 'deep-rooted historic tradition that everyone should have his own day in court,'" Richards v. Jefferson County, Alabama, 517 U.S. 793, 798 (1996) (quoting 18 Wright & Miller, Federal Practice and Procedure, § 4449, at 417 (1981)), and the principle that federal court abstention from the exercise of otherwise-proper jurisdiction

-18-

"remains 'the exception, not the rule,'" NOPSI, 491 U.S. at 359 (quoting Haw. Hous. Auth. v. Midkiff, 467 U.S. 229, 236 (1984)).

The Supreme Court has addressed in two cases whether distinct but very closely related parties should be treated the same for purposes of Younger abstention, but those cases do not lead us to extend Younger to the circumstances presented here. See Hicks v. Miranda, 422 U.S. 332 (1975); Doran v. Salem Inn, Inc., 422 U.S. 922 (1975).

In Hicks, two employees of an adult business were prosecuted for showing an obscene movie, and several of the obscene tapes were seized from the business. 422 U.S. at 335-36. The Court found that the business whose employees were criminally prosecuted was barred from bringing suit by Younger, as the federal suit would have interfered with the state criminal prosecution, id. at 348, but its reasons do not establish the principle the Attorney General advances. It is true the Court stated the business "had a substantial stake in the state proceedings, so much so that they sought federal relief, demanding that the state statute be declared void and their films be returned to them. Obviously, their interests and those of their employees were intertwined; and, as we have pointed out, the federal action sought to interfere with the pending state prosecution." Id. at 348-49. Even if this were dicta, as it may be for the reasons we describe, such dicta is given weight. See, e.g., SEC v. Rocklage, 470 F.3d

1, 7 n.3 (1st Cir. 2006) ("Even dicta in Supreme Court opinions is looked on with great deference."). Immediately after this discussion, the Court identified an independent ground for finding the business subject to Younger: that the state had, subsequent to the filing of the federal suit, initiated criminal proceedings against the business, and that in such circumstances Younger should apply, as no "proceedings of substance on the merits [had] taken place in the federal court." Hicks, 422 U.S. at 349.

Hicks must be understood in the context of Doran, which was decided six days later. There, three corporations operated topless bars, only one of which was criminally prosecuted under a new ordinance. 422 U.S. at 924-25. The Court found that the corporation which the state criminally prosecuted could not bring suit due to Younger. Id. at 929. More significantly for our purposes, the Court found that the other two corporations, who had similar, perhaps even identical interests, could bring suit and Younger did not apply. Id. at 931. The Court explained:

> While there plainly may be some circumstances in which legally distinct parties are so closely related that they should all be subject to the Younger considerations which govern any one of them, this is not such a case; -- while respondents are represented by common counsel, and have similar business activities and problems, they are apparently unrelated in terms of ownership, control, and management. We thus think that each of the respondents should be placed in the position required by our cases as if that respondent stood alone.

-20-

Id. at 928-29.

As a second reason not to engage in Younger abstention, the Doran Court explained that neither declaratory nor injunctive relief could interfere "with enforcement of contested statutes or ordinances except with respect to the particular federal plaintiffs, and the State is free to prosecute others who may violate the statute."  Id. at 931.

Doran makes clear that an alignment of interests among similar but distinct parties is not per se enough, even when the state proceeding is a criminal prosecution and so the state's interest in non-interference is at its height.  If two businesses were not barred from pursuing a federal suit despite having interests and representation in common with a state-court criminal defendant, as was the case in Doran, it is difficult to see how an industry association with some interests in common with a few of its members who are state-court civil defendants would be barred by Younger from pursuing its own federal suit.  Doran explained that the parties must be "so closely related" to justify treating them the same before they may all "be subject to the Younger considerations which govern any one of them."  Id. at 928.

There is no doubt that the MDA is legally distinct from its members, each complying with the formalities established by state law.  The MDA and each of its members have their own interests, which may at times be similar to those of some or all of

-21-

the members, but which may not be the same. Some members may have interests distinct from or even adverse to other members. It is likely that the MDA is responsive to a majority of its members, when there are different views. And here, not even a majority is involved in the state-court suits against three members. Only a small fraction -- three out of over forty -- of its members are involved in the state court proceedings where § 148B is at issue. Those of its members who are not involved in such proceedings have an interest in a determination of whether § 148B is pre-empted, and the complaint so alleges. The complaint alleges that because "many MDA members engage independent contractor delivery drivers or contract with entities that engage independent contractor delivery drivers, they arguably violate the Statute and this places them in peril of an enforcement action and civil actions by private parties."

Under these circumstances, neither Hicks nor Doran, justifies treating the MDA the same as its members who are state-court defendants for Younger purposes. Hicks involved (1) a close employer-employee relationship between the federal-court plaintiff and state-court defendant, (2) a particular piece of property at issue in both proceedings, and (3) a federal action that "sought to interfere with the pending state prosecution." 422 U.S. at 348-49. Here, none of those circumstances is present: there is no such

-22-

relationship, no particular piece of property at issue, and, as is explained below, no risk of interference.

Some circuits applying Hicks have found Younger applicable to non-parties where the federal-court plaintiff's right was "derivative" of the right of a state-court defendant, finding the interests of the parties to be "intertwined" in such circumstances. See Citizens for a Strong Ohio v. Marsh, 123 F. App'x 630, 635 (6th Cir. 2005) ("Younger abstention may also be appropriate for non-parties to the state action when '[s]uccess on the merits . . . is entirely derivative' of the rights of the state action parties." (alterations in original) (quoting Spargo v. N.Y. State Comm'n on Judicial Conduct, 351 F.3d 65, 83 (2d Cir. 2003)); D.L. v. Unified Sch. Dist. No. 497, 392 F.3d 1223, 1230 (10th Cir. 2004) ("[W]hen in essence only one claim is at stake and the legally distinct party to the federal proceeding is merely an alter ego of a party in state court, Younger applies."); Spargo, 351 F.3d at 83 (Younger applies where the federal-court plaintiff's claim is "entirely derivative of whatever rights that" the state-court defendant may have (internal quotation mark omitted)); Stivers v. Minnesota, 575 F.2d 200, 203 (8th Cir. 1978) (Younger applies to non-party where "[t]he only [federal-court] standing . . . demonstrated . . . arises from the alleged impact" of the challenged action on the state-court defendants).

We need not comment on whether we agree these cases were properly decided, as even assuming they were, their rationale does not apply here. As explained above, the MDA members who are not state court defendants -- the vast majority of MDA's members -- have an interest in determining the constitutionality of the state law. The MDA itself has a distinct interest in challenging the Ordinance.[7] As a result, the MDA's basis for bringing suit is not entirely derived from those of its members who are state-court defendants, and this line of cases does not justify applying Younger here.

Doran also does not extend to the circumstances present here. There, the Court stated that there "may be some circumstances" where parties are "so closely related" in terms of "ownership, control, and management" to be treated the same for Younger purposes. 422 U.S. at 928-29. The MDA and its members, who are state-court defendants, on the facts present here are not "so closely related" to justify treating them the same under Younger: only a small fraction of MDA members are state-court

___

[7] It is well-accepted in the standing context that organizations may have interests of their own, separate and apart from the interests of their members. See, e.g., Havens Realty Corp. v. Coleman, 455 U.S. 363, 378-79 (1982); NAACP v. Button, 371 U.S. 415, 428 (1963); 13A Wright & Miller, Federal Practice and Procedure § 3531.9.5 (3d ed. 2011) ("[A]n organization can assert standing to protect against injury to its own organizational interests," separate and apart from an organization's ability to "borrow . . . the standing that could be established by individual members.").

-24-

defendants, and the Attorney General makes no claim of any substantial ownership, management, or control between the state-court defendants and the MDA.

Indeed, those circuits to have applied Doran to non-defendants have only found organizations to be sufficiently closely related if the degree of ownership, management or control is substantial and involves at least a majority interest. See Cedar Rapids Cellular Tel., L.P., v. Miller, 280 F.3d 874, 882 (8th Cir. 2002) (applying Younger to a non-party in whom a state-court defendant had "a controlling interest"); Warmus v. Melahn, 62 F.3d 252, 256 (8th Cir. 1995) (applying Younger where the non-party individual was the "beneficial owner, officer and director" of the state-court defendant corporation), vacated on other grounds, 517 U.S. 1241 (1996).

Not all circuits agree with even that formulation. See Bickham v. Lashof, 620 F.2d 1238, 1244 (7th Cir. 1980) (finding the interests of a corporation, which was the state-court defendant, and "its sole shareholder" to be insufficiently intertwined to justify applying Younger to the shareholder).

We need not decide whether we agree with the first line of cases because no such ownership or control relationship is present here.[8]

---

[8] The Attorney General attempts to characterize the MDA as the "alter ego" of its three individual members, borrowing the phrase from other legal doctrines. It is questionable whether it

Further, the one circuit which has addressed a more analogous situation has held that Younger does not apply in such circumstances. See Citizens for a Better Env't, Inc. v. Nassau County, 488 F.2d 1353, 1360-61 (2d Cir. 1973) (holding that Younger does not bar an organization's challenge to anti-solicitation ordinances notwithstanding pending proceedings against its members because the organization's interests lie in the future applicability of the ordinances).

Significantly, the circuits are in accord that the application of Younger to non-parties is proper only in certain limited, exceptional circumstances. See Spargo, 351 F.3d at 84 ("[T]his case presents one of the narrow circumstances in which Younger may properly extend to bar claims of third-parties who are not directly involved in the pending state action."); Green, 255

_____

is appropriate to lift this concept from other areas of law, where it serves different purposes, and use it in abstention cases. Even if the alter ego concept were easily transferable to abstention, it would not be met here. The MDA has not assumed the on-going expectations of a predecessor employer, and the question here is not the labor law question of whether in consequence the MDA has assumed obligations to employees. See NLRB v. Hosp. San Rafael, Inc., 42 F.3d 45, 50 (1st Cir. 1994) (describing the labor law alter ego doctrine, whereby an employer will be treated interchangeably with its predecessor for purposes of applying labor laws, typically when the new employer is "created by the owners of the first for the purpose of evading labor law responsibilities"). Nor would the MDA be considered an alter ego of its members for purposes of piercing the corporate veil, which typically requires, among other elements, "pervasive control" over, In re Ontos, Inc., 478 F.3d 427, 432 (1st Cir. 2007), or "complete domination" of, Goya Foods, Inc. v. Unanue, 233 F.3d 38, 43 (1st Cir. 2000), the supposed alter ego by other entities. The traditional legal definitions and uses of the alter ego doctrine do not apply here.

F.3d at 1100 (explaining that Younger applies to non-parties in "quite limited circumstances"); Harmon v. City of Kansas City, Mo., 197 F.3d 321, 325-26 (8th Cir. 1999) (Younger may apply to non-parties in "extraordinary circumstances"); United States v. Composite State Bd. of Med. Exam'rs, 656 F.2d 131, 137 (5th Cir. Unit B 1981) ("[A]bstention bars prospective relief to a person not a party to the state action only in the extraordinary situation in which the interests of the state defendant and the federal plaintiff are so 'intertwined' as to be considered identical."); Robinson v. Stovall, 646 F.2d 1087, 1090 (5th Cir. Unit A 1981) ("Except in extraordinary circumstances, a civil rights plaintiff's ability to sue to vindicate his rights in federal court is not affected by the simultaneous pendency of a state prosecution against someone else . . . .").

In sum, neither the Supreme Court nor the other circuits have extended Younger abstention to these facts.[9] Nor do the rationales provided by the Court in Hicks and Doran justify the

_____

[9] Our precedent does not support extending Younger to these facts. Casa Marie, Inc. v. Superior Court of Puerto Rico, 988 F.2d 252 (1st Cir. 1993), is factually distinguishable because the nonintervenors, who were not parties to the state-court action, were seeking to enjoin enforcement of a valid state-court judgment. Id. at 268. The court made clear that "[t]he nonintervenors, not having been joined in the neighbors' Superior Court complaint, probably could have chosen to press their federal claims in federal court prior to the entry of the judgment and contempt decree, subject only to the less imposing obstacle of Colorado River abstention." Id. at 268 n.19 (emphasis added). Here, there is no state-court judgment whose enforcement might be interfered with by the federal suit.

-27-

application of Younger here. There is no indication that the Court would extend Younger's application to non-parties to such circumstances,[10] and such a result would go beyond the outer limits to which the other circuits have extended Younger. What is conclusive is that in these circumstances the Younger interference requirement has not been met.

> 2. Lack of Interference

It is also clear on these facts that there is no real risk of interference with the three ongoing private civil actions in the state courts. Younger abstention is based, in large measure, on the "seriousness of federal judicial interference with" ongoing state-court proceedings. Huffman, 420 U.S. at 603; accord Maymó-Meléndez v. Álvarez-Ramírez, 364 F.3d 27, 31 (1st Cir. 2004) ("Younger is . . . built around the principle that . . . federal courts should refrain from issuing injunctions that interfere with ongoing state-court litigation . . . ."). As a result, where "neither declaratory nor injunctive relief can directly interfere" with the ongoing state proceedings, there is no basis for Younger abstention. Doran, 422 U.S. at 931; accord Rio Grande, 397 F.3d at 70 ("Younger applies only when the relief asked of the federal

---

[10] In the context of res judicata, the Court has recently cautioned against lumping together distinct parties for purposes of claim and issue preclusion, rejecting the "virtual representation" doctrine. Taylor v. Sturgell, 553 U.S. 880, 885 (2008). The Court made clear that non-parties are bound only in certain "limited circumstances." Id. at 898 (quoting Martin v. Wilks, 490 U.S. 755, 762 n.2 (1989)).

court 'interfere[s]' with the state proceedings." (alteration in original) (quoting Quackenbush, 517 U.S. at 716)); Green, 255 F.3d at 1096 ("The Supreme Court has . . . confirmed that 'interference' with ongoing state judicial proceedings is a necessary condition for Younger abstention."). Interference is "usually expressed as a proceeding that either enjoins the state proceeding or has the 'practical effect' of doing so." Rio Grande, 397 F.3d at 70.

Nothing in the MDA's requested relief would interfere with the three state-court proceedings involving its members. The prospective injunctive relief sought pertains solely to the Attorney General, and would only preclude the Commonwealth, not private parties, from bringing suit under § 148B(a)(2) with respect to motor carriers engaged in interstate commerce.[11]

The declaratory relief sought would also not cause any interference with the state-court proceedings. It is true that the MDA seeks a general declaration that subsection (a)(2) is pre-empted with respect to motor carriers engaged in interstate commerce. The Supreme Court has made clear that is not a basis to invoke Younger. In Steffel and in Doran, the outcomes of the federal suits would create judicial precedent which might or might

---

[11] If the Attorney General brought such an action in contravention of the injunction, then the usual proceedings provided for when a party has violated an injunction would be available in the district court. Additionally, the defendant may be able to raise the injunction as a defense in the state court action.

not coincide with the determinations made by the state courts as to other parties under the same state statutes.  That did not warrant Younger abstention.

Indeed, the Court in NOPSI made clear that even though "the federal court's disposition of such a case may well affect, or for practical purposes pre-empt, a future -- or, as in the present circumstances, even a pending -- state-court action," such an effect was insufficient to give rise to Younger abstention.  491 U.S. at 373; see also Rio Grande, 397 F.3d at 71 ("[T]he mere possibility of inconsistent results in the future is insufficient to justify Younger abstention."); Green, 255 F.3d at 1097 (explaining that "the 'mere potential for conflict in the results of adjudications,' is not the kind of 'interference' that merits federal court abstention" (quoting Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 816 (1976))).

Beyond that, there is another reason there is no interference here.  As a practical matter, the "[s]tate courts are not bound by the dictates of the lower federal courts, although they are free to rely on the opinions of such courts when adjudicating federal claims."  Evans v. Thompson, 518 F.3d 1, 8 (1st Cir. 2008) (citing Lockhart v. Fretwell, 506 U.S. 364, 376 (1993) (Thomas, J., concurring)); accord Steffel, 415 U.S. at 482 n.3 (Rhenquist, J., concurring) (explaining that a federal declaratory judgment "would not be accorded the stare decisis

effect in state court that it would have in a subsequent proceeding within the same federal jurisdiction. Although the state court would not be compelled to follow the federal holding, the opinion might, of course, be viewed as highly persuasive."); Magouirk v. Phillips, 144 F.3d 348, 361 (5th Cir. 1998) ("[T]he Louisiana state courts are not bound by Fifth Circuit precedent when making a determination of federal law."); Bromley v. Crisp, 561 F.2d 1351, 1354 (10th Cir. 1977) (en banc) (holding that state courts "may express their differing views on the retroactivity problem or similar federal questions until we are all guided by a binding decision of the Supreme Court"); United States ex rel. Lawrence v. Woods, 432 F.2d 1072, 1076 (7th Cir. 1970) ("[B]ecause lower federal courts exercise no appellate jurisdiction over state tribunals, decisions of lower federal courts are not conclusive on state courts."); Owsley v. Peyton, 352 F.2d 804, 805 (4th Cir. 1965) ("Though state courts may for policy reasons follow the decisions of the Court of Appeals whose circuit includes their state, they are not obliged to do so." (citation omitted)).[12]

---

[12] Nothing in the Federal Declaratory Judgment Act changes this: the Act simply provides that, where there is an "actual controversy within [a federal court's] jurisdiction," the court may "declare the rights and other legal relations of any interested party seeking such declaration," and that "[a]ny such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201(a). The Act does not contain any provisions indicating that declaratory judgments are authoritative vis-à-vis nonparties to the litigation. In fact, the Act indicates it may only declare the rights of "interested part[ies] seeking [the] declaration." Id. The Supreme Court, in

As a matter of state law, Massachusetts state courts do not regard the pronouncements of lower federal courts as binding. ACE Prop. & Cas. Ins. Co. v. Comm'r of Revenue, 770 N.E.2d 980, 986 n.8 (Mass. 2002) ("Although we are not bound by decisions of Federal courts (other than the United States Supreme Court) on matters of federal law, 'we give respectful consideration to such lower Federal court decisions as seem persuasive.'" (citation omitted) (quoting Commonwealth v. Hill, 385 N.E.2d 253, 255 (Mass. 1979))); Commonwealth v. Montanez, 447 N.E.2d 660, 661 (Mass. 1983) ("Though we always treat their decisions with deference, we are not bound by decisions of Federal courts except the decisions of the United States Supreme Court on questions of Federal law.").  Thus, should the district court issue a declaratory judgment on remand finding the state statute pre-empted, that judgment would not be binding on Massachusetts state courts and litigation by private parties may proceed.  That said, a defendant may seek to enforce the declaratory judgment in federal court should the Attorney General continue to bring actions under the statute in state court despite the declaratory judgment.

---

upholding the constitutionality of this Act, made clear that its operation is "procedural only," Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 240 (1937), and that declaratory judgments are only proper "[w]here there is such a concrete case admitting of an immediate and definitive determination of the legal rights of the parties," id. at 241.

The Attorney General does not argue that a federal decision could result in collateral estoppel effects that would amount to interference with the state proceedings. Even if such collateral estoppel effects were present, they would not suffice to justify Younger abstention. Rio Grande, 397 F.3d at 71 ("Normal res judicata effects of federal actions on state actions . . . are of course not enough to trigger Younger.").

Given this lack of any interference with the state-court proceedings, Younger abstention is inapplicable.[13]

---

[13] The district court primarily relied on McKenna v. Powell, No. 10-017ML, 2010 WL 2474037 (D.R.I. Apr. 28, 2010), aff'd, 631 F.3d 581 (1st Cir. 2011) (per curiam), to find interference. See Mass. Delivery Ass'n, 797 F. Supp. 2d at 172-73. In McKenna, the plaintiff, a head of a law firm, brought suit against various Rhode Island officials in federal court, arguing that a provision of Rhode Island's workers' compensation law was unconstitutional. 2010 WL 2474037, at *1. Defendants pled Younger as a defense, arguing that the plaintiff was a party to various state actions, both in the state courts and before the unemployment agency. Id. at *2-3. The court found the inference requirement easily met, because granting the plaintiff relief would vitiate state court and agency orders that had previously been issued. Id. at *4. Here, the MDA is not a party in the state-court proceedings, and issuance of the injunctive or declaratory relief it requests would in no way vitiate any state-court orders or otherwise interfere with the state-court proceedings.

Our conclusion here is also not in tension with our decision in Rio Grande which held that there was no interference with parallel state proceedings brought by the federal plaintiffs as to other issues. 397 F.3d at 71. In discussing why a plaintiff with pending state-court proceedings was not subject to Younger, we noted that "interference also clearly exists where the plaintiff is seeking a declaratory judgment that a prosecution, or the statue serving as its basis, is illegal or unconstitutional." Id. at 70. Because the plaintiff was not subject to state prosecution, that condition was not met. The attempt to transpose the language regarding interference as to the plaintiff in Rio Grande to the particular context present here thus fails.

-33-

IV.

The district court erred as a matter of law in dismissing the suit based on Younger abstention. We reverse the judgment of the district court and remand for further proceedings consistent with this opinion.